In re HONEYCUTT GRAIN
COMPANY, INC., Debtor.

BANK OF DIXIE, Plaintiff,

v.

John F. KING, Defendant.

Bankruptcy No. 582–00068.
Adv. No. 584–0004.

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

July 27, 1984.

James Robert Jeter, Shreveport, La., for Bank of Dixie.

Louis D. Smith, Shreveport, La., for John F. King.

## STATEMENT OF THE CASE

LeROY SMALLENBERGER, Bankruptcy Judge.

The first modified disclosure statement was filed in this case, on July 27, 1982, and was approved by this Court, on September 15, 1982. The first modified plan of reorganization was confirmed on October 6, 1982.

Under the plan, the farmers were to be cashed out either from retainage from their crops held by the trustee or by the Bank of Dixie purchasing their claims at $0.50 on the dollar. The remaining property was to be distributed among those who had an interest, i.e., the unsecured creditors.

The plan transferred all causes of action of the debtor and the trustee to the Bank of Dixie to pursue on behalf of and for the benefit of the unsecured creditors. The Bankruptcy Court retained jurisdiction to allow the Bank of Dixie to enforce these causes of action.

The plan operated as a finding that the schedules were a final list of creditors, claims, and amounts.

After confirmation, the Bank of Dixie enforced and collected what it determined were the collectible claims assigned to it.

One of these assigned claims was the loan receivable from John F. King in the amount of $20,290.00. (See schedule B-2 of the schedules filed by debtor in the record and attached to the Disclosure Statement). Schedule D attached to the first modified plan called for the Bank of Dixie to purchase John F. King's bean claim of $14,809.74 at $0.50 on the dollar for the amount of $7,402.37.

The Bank of Dixie exercised the Trustee's rights assigned to it on behalf of the unsecured creditors and deducted the amount it owed John F. King from the amount John F. King owed the estate under 11 U.S.C. § 502(d). The Bank of Dixie did not initially sue John F. King, an Indiana resident, for the balance of the claim he owed the estate.

After completing its assigned task of collecting what funds it could collect on behalf of the unsecured creditors, Bank of Dixie filed a motion, on December 1, 1983, in which it proposed to distribute the collected assets to the unsecured creditors.

Thereafter, John F. King filed an objection to the motion to distribute arguing that he was entitled to be paid under the plan and had not been paid. Other objections were also filed but were withdrawn shortly after they were filed.

The Bank of Dixie took the position that John F. King owed the estate money and therefore he should not receive money from the estate unless he pays the money that he owes the estate. As a result, the Bank of Dixie filed a complaint against John F. King to collect the loan receivable in the amount of $20,290.00. In addition, the Bank of Dixie sued John F. King to collect the other funds due the estate under the cause of action described on pages 13 and 14 of the Disclosure Statement. The

Disclosure Statement listed the amount due under this cause of action as $60,880.00.

In response, John F. King filed an answer and counterclaim asking for the recovery of $205.00 as a Class 5 creditor, and for $6,034.50 for the sale of his rice, and for $7,402.37 as a Class 6 creditor.

At the trial, Mr. King abandoned his claim for the $205.00 and for the $6,034.50.

At the trial, Mr. King filed an amendment to his answer and counterclaim alleging that the claim of the Bank of Dixie against him is barred by 11 U.S.C. § 546(a)(2) and furthermore, that by setoff under Section 553, Mr. King is entitled to a setoff against any claims brought against him by the Bank of Dixie.

At the trial, Mr. King attempted to prove that the debtor owed him approximately $21,000.00 as a result of a series of check transactions. However, Mr. King did not file a proof of claim in this case in support of these check transaction, and never made them part of the case until the day of the trial, on May 24, 1984. It was these check transactions that Mr. King claimed gave him the right of setoff against any claims brought against him by the Bank of Dixie. This Court ordered Mr. King to respond to the Bank of Dixie's counsel and to supply him with the complete bank statements, checks, and deposit slips in the various banks to which he testified he had accounts, so that the Bank of Dixie's counsel could review the evidence relating to the check transactions. This Court gave Mr. King two weeks to respond. By order of June 6, 1984, this Court gave Mr. King an additional week to respond.

By way of response, Mr. King only supplied documents in support of the particular transactions he presented at the trial and an affidavit from a CPA. Mr. King did not respond to this Court's order or to the Bank of Dixie's counsel's follow-up requested, dated June 19, 1984.

## FINDINGS OF FACT

### (1)

Supplementing each other's testimony, cumulatively, John F. King and L.B. Ho-

neycutt, the principal officer, director and shareholder of debtor testified as follows:

(a) L.B. Honeycutt, John F. King, Russell Kellin and Glenn Sullivan intended to form a corporation to develop and construct an alcohol production facility.

(b) The corporation was never formed.

(c) L.B. Honeycutt was to have owned 51% of the corporation, and John F. King was to have owned 35% of the corporation, and the other participants were to have owned the remaining interest.

(d) The preincorporation group hired Union Development Company to do the engineering and design work for the alcohol production facility.

(e) The debtor corporation herein paid to Union Development Company $45,000.00 for the design work.

(f) The $45,000.00 advance was made by the debtor corporation herein for and on behalf of the preincorporation group.

(g) Mr. John F. King owes 38% of the $45,000.00 advance to the debtor corporation which is equivalent to $17,000.00.

### (2)

Mr. L.B. Honeycutt did not prepare the Schedule B-2 which indicates the loan receivable of Mr. King due to the debtor corporation in the amount of $20,290.00. This schedule was prepared by Mr. L.B. Honeycutt's son. Mr. Honeycutt was not sure what constituted the difference between $20,290.00 and $17,100.00 except for the $51.51 item represented by a document marked P-2 which reflects a debt due debtor. Mr. Honeycutt indicated that his son prepared the document from the debtor's records and that he had no reason to believe that they were inaccurate.

### (3)

Mr. John F. King abandoned his counterclaim for $205.00 and abandoned his counterclaim for $6,034.50.

(4)

Mr. King introduced into evidence schedule K–1 in an attempt to prove that the debtor owed him more prepetition money than he owed the debtor. This schedule indicated an exchange of checks between the debtor corporation and Mr. King, and which Mr. King represented to the Court that the transactions were a series of loans. The Bank of Dixie objected to the introduction of such evidence.

(5)

The Court ordered Mr. King to supply the Court and the opposing counsel with the complete bank statements, checks, and deposit slips in the various banks to which he testified that he had accounts. Mr. King has not complied with that order, and instead has only supplied documents in support of the particular transactions that he presented at trial. Mr. King's failure to comply to the Court order has created much doubt in the representations made by Mr. King to this Court.

(6)

Without complete bank statements on both sides, the Court is unable to determine the true nature of this "loan system" between Mr. King and the debtor corporation. Due to the incomplete evidence supplied to the Court by Mr. King, and a complete disregard of a Court Order to complete the record, the Court finds that there is insufficient evidence to establish that the debtor corporation owes Mr. King any money.

(7)

Mr. King did not establish at trial by way of a resolution by the debtor corporation's Board of Directors that the debtor corporation's officers were authorized to either borrow or to loan money to Mr. King.

(8)

Mr. King never filed a proof of claim in this case for the amount of money that he claimed at the trial was owed to him by the debtor corporation as a result of the "loan system" which he entered into with the debtor.

## CONCLUSIONS OF LAW

### Proof of Claim Not Filed Timely

Under Bankruptcy Rule 3003(c)(3) the Court must fix a time within which proofs of claim may be filed. In this case, the Court fixed the bar date for filing proofs of claim as the date the Disclosure Statement was approved. The Disclosure Statement was approved on September 15, 1982. Mr. King has shown no basis for enlarging the time for filing a proof of claim in support of his "loan transactions". To allow Mr. King to now file his proof of claim over a year and one-half after the bar date supported only by an amendment counterclaim filed on the day of trial would be highly prejudicial to the Bank of Dixie and the unsecured creditors. Thus, Mr. King's claim for funds due him pursuant to any "loan transactions" is disallowed as being untimely filed. *In Re Tobilar, Inc.,* 29 B.R. 672 (Bkrtcy.W.D.La.1983), *In Re CBS Millwork Supply, Inc.,* 21 B.R. 960 (Bkrtcy.E.D.Penn.1982), *In Re Popular Fruit & Produce, Inc.,* 21 B.R. 185 (Bkrtcy.S.D.N.Y.1982), and *In Re Keyboards America, Inc.,* 30 B.R. 349 (Bkrtcy. E.D.Va.1983).

### Did the Evidence Before the Court Establish that a Debt is Owed Mr. King by the Debtor Corporation?

As stated in the Findings of Fact, due to the incomplete evidence supplied to the Court by Mr. King, and a complete disregard of a Court Order to complete the record, the Court found that there is insufficient evidence to establish that the debtor corporation owes Mr. King any money due to so called "loan transactions".

Mr. King referred to the series of check transfers between himself and the debtor corporation as a series of loan transactions. The Court is particularly concerned about the true nature of these so called loan transactions. If the Court had the complete record before it then these check transfers between Mr. King and the debtor corporation may begin to look like a system referred to a "Kiting".

According to *La.R.S.* 12:82 officers or agents of a corporation do not have the authority to either loan money or borrow money except as provided in the articles of incorporation or by resolution of the board of directors. Mr. King did not establish at trial by way of a resolution by the debtor corporation's Board of Directors that the debtor corporation's officers were authorized to either borrow or to loan money to Mr. King.

For the above reasons, the Court holds that Mr. King did not establish that a debt is owed Mr. King by the debtor corporation due to so called "loan transactions".

*Right of Setoff*

■ The Court concluded that Mr. King did not establish that a debt is owed Mr. King by the debtor corporation, due to so called loan transactions, but even if Mr. King had established that such a debt was owed to him by the debtor corporation Mr. King would not be entitled to the right of setoff because he did not file a timely proof of claim for the amount owed to him.

Mr. King asserts his right of setoff for the "loan transactions". The right of setoff is in reality an equitable doctrine independent of loan theory; however, the right of setoff is recognized in the Bankruptcy Code of 1978, 11 U.S.C. Sections 506 and 553, as investing the holder thereon with the status as a secured creditor. This means that a creditor whose claim is protected by the right of setoff must file a proof of claim as such, and file a motion to seek relief from the automatic stay in order to exercise the right of setoff. Absent the filing of a proof of claim before the bar date for filing proof of claims or the fact that the creditor did not have knowledge of the bankruptcy in order to file a timely proof of claim, the right of setoff is now lost.

As stated in the above paragraph, the Bankruptcy Code of 1978 treats a creditor with a right of setoff as a secured creditor. The following discussion explains how a secured creditor, who has knowledge of the bankruptcy, but fails to file a timely proof of claim, is treated in bankruptcy:

11 U.S.C. Section 506(d) provides:

"To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the Court determine and allow or disallow such claim under Section 502 of this title; or

(2) such claim was disallowed only under Section 502(e) of this title."

Under 11 U.S.C. Section 502 a claim may be objected to because the claim was not timely filed as set out in Bankruptcy Rule 3003(c)(3). The following discussion explains the mechanism by which a secured creditor (and a creditor with right of setoff) must use to protect his secured status:

"In order to be properly understood, Section 506(d) may be viewed as a reconciliation of two principal competing interests: the need for a debtor to obtain a fresh start, on the one hand, and the right of a lienholder to be protected from the deprivation of his property without due process. The interests are reconciled by requiring that a lienholder be given the opportunity for his "day in court" before any action affecting his lien can be taken. If he is given the opportunity for his day in court, his lien will survive (unless he agrees to a different treatment) to the extent his allowed, and will be voided to the extent his claim is disallowed (for any reason other than it is a claim for reimbursement or contribution within the purview of Section 502(e))."

Therefore a secured creditor, who had knowledge of the bankruptcy had his opportunity for his "day in court", and if he did not timely file a proof of claim his lien right is voided because his claim will be disallowed in bankruptcy. This same treatment applies to the creditor with the right of setoff because the Bankruptcy Code treats that creditor as a secured creditor.

At the hearing on this matter, no evidence was presented to the Court that Mr. King lacked knowledge of the bankruptcy in order to file a timely proof of claim for

monies allegedly owed to him due to the "loan transactions" between Mr. King and the debtor corporation. Therefore, the Court holds that should any money be owed to Mr. King by the debtor corporation through the "loan transactions" that Mr. King does not have the right to setoff against the debtor corporation because Mr. King did not file a timely proof of claim.

See also *In Re Airspur Carribbean, Inc.*, 1 B.C.D. 930 (Puerto Rico 1975). In this case the Bankruptcy Judge did not allow a defendant in a suit on accounts receivable by a Trustee of the bankrupt corporation to assert the right of setoff because the defendant had not filed a timely proof of claim in the bankruptcy case. The Judge reasoned that "[A] different ruling would allow a person who owes money to an estate to stay lurking in the dark without manifesting his obligation to the estate and only to come out to assert a setoff upon being required by the Trustee to pay to the estate what he justly owes to it."

*Was the Complaint Against Mr. King Timely Filed?*

■ The complaint brought by the Bank of Dixie on behalf of the unsecured creditors was filed against Mr. John F. King within two years after the appointment of a Trustee and prior to the time the case was closed since the case has not yet been closed. Accordingly, 11 U.S.C. § 546(c) barring any action against Mr. King by the Bank of Dixie as assignee of the debtor and the Trustee's rights is inapplicable.

*Liability of Principals When the Corporation is Never Formed*

■ Corporate principals who incur indebtedness prior to the corporation's becoming a legal entity become personally liable insolido for the indebtedness arising therefrom. *La.R.S.* 12:26, *La.R.S.* 12:92 A, *Daniel A. Ponwells & Associates, Inc. v. Fiumava,* 233 So.2d 16 (4th Cir.1970).

Even though Mr. King intended to be liable for only 38% of the obligations arising out of the alcohol production facility, he is personally liable "jointly and severally"

(*La.R.S.* 12:92 A) which under Louisiana law is the same as "insolido liability" on the entire obligation. *La.R.S.* 12:92 A. Therefore, Mr. King owes the Bank of Dixie as assignee of the debtor for and on behalf of the unsecured creditors the sum of $45,000.00 for the loan made by the debtor corporation to the principals of the unincorporated association.

*Total Amount Owed by Mr. King to the Bank of Dixie as Assignee of the Rights of the Debtor Corporation*

■ As stated above, Mr. King owes the Bank of Dixie as assignee of the debtor corporation's rights the sum of $45,000.00 for the loan made by the debtor corporation to the principals of the unincorporated association. Mr. King also owes the Bank of Dixie as assignee of the debtor corporation's rights the balance of the amount due between $17,100.00 and $20,290.00 pursuant to Mr. Honeycutt's testimony at the trial or an additional $3,190.00 for a total of $48,190.00.

Mr. King is entitled to $14,804.74 for his beans. Under the plan, the Bank of Dixie was to pay each farmer $0.50 on the dollar for his grain claim (excluding rice) or $7,402.37. However, the Bank of Dixie is the assignee of the rights of the debtor and the trustee. Under 11 U.S.C. § 502(d), the Trustee may not pay any entity any claim that it may have if property is recoverable under Section 542. Mr. King owes the estate $48,190.00. Since Mr. King has not turned over the $48,190.00 he owes the estate, the Trustee was proper in not paying Mr. King $14,804.76 and as assignee of the Trustee, the Bank of Dixie was proper in not paying Mr. King $14,804.76. Under 11 U.S.C. Section 542, the debtor corporation may offset any amount it is owed by the debtor against any amount it owes the debtor. Accordingly, the balance due the Bank of Dixie as assignee of the rights of the debtor and the Trustee is $33,385.24.

*Conclusion*

John F. King owes the Bank of Dixie as assignee of the rights of the debtor corporation and the Trustee the sum of $33,-

385.24. The funds shall be distributed to the unsecured creditors in the same percentages as set forth in the final order to be approved by this Court for the distribution of the funds held by the Bank of Dixie to unsecured creditors, when such funds are collected from John F. King. Also the Court will sign an order approving the distribution of funds held by the Bank of Dixie to the unsecured creditors after reduction for costs of this action against John F. King as authorized by the plan.