**In re AMERICAN METALLURGICAL PRODUCTS CO., INC. and Satellite Alloy Corp., Debtors.**

**Mary Reitmeyer, Trustee, Movant,**

v.

**Kirkpatrick & Lockhart, LLP, Respondent.**

**Bankruptcy No. 83–21457–MBM. Motion No. 98–979M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 22, 1998.

Mary Reitmeyer and Carol Coliane, for Mary Reitmeyer, Trustee.

George Cheever, for Kirkpatrick & Lockhart, LLP.

Edward C. Leckey, for the Estate of William E. Knapp.

**1.** K & L asserts, and this Court accepts, that K & L's Proof of Claim for Administrative Expenses constitutes both a proof of claim and a " 'request for payment of an administrative expense' as contemplated by 11 U.S.C. § 503(a)." Furthermore, K & L's Final Fee Application, which was filed on March 31, 1998, also constitutes a request for payment of the same administrative expense claim.

## MEMORANDUM OPINION

M. Bruce McCULLOUGH, Bankruptcy Judge.

The instant motion represents the objection by Mary Reitmeyer, the Chapter 7 trustee in the above-captioned bankruptcy case, to the administrative expense claim (hereafter the "Claim") of Kirkpatrick & Lockhart (hereafter "K & L"), allowance of which is sought by K & L via the Proof of Claim for Administrative Expenses which it filed on January 31, 1997.[1] K & L's Claim, which is valued by K & L at $121,545.43, represents K & L's request for payment of that compensation which it requests in its Final Fee Application for post-petition legal services that K & L rendered to the above-captioned debtors, American Metallurgical Products Company, Inc. and Satellite Alloy Corporation (hereafter "Ammet" and "SAC" respectively), prior to the conversion of the instant case from Chapter 11 to Chapter 7 on March 11, 1985.[2]

### STATEMENT OF FACTS

K & L filed its Claim[3] on January 31, 1997, in response to a notice that it received from the trustee informing K & L that (a) the instant case had been reopened, and (b) creditors on the original mailing matrix needed to file new proofs of claim forthwith. The trustee reopened the instant case on August 1, 1995, so that she could administer approximately $800,000 in bankruptcy estate assets that she had discovered subsequent to the initial closing of the case on September 20, 1989. Because the trustee was unsuccessful in serving notice of the case reopening on sixty-eight (68) of the creditors who were on the original mailing matrix, she successfully moved for authority to (a) advertise such notice to those creditors in several newspapers, and (b) request that all creditors on the

**2.** K & L initially valued its Claim at $125,059.61 but has subsequently amended the Claim to $121,545.43.

**3.** Throughout this opinion the Court will use the shorthand "file its Claim" to refer to K & L's filing of (a) a proof of claim for its Claim, and/or (b) a request for payment of its Claim as contemplated by § 503(a).

original mailing matrix file new proofs of claim in order to share in the distribution of the recently-discovered $800,000. K & L was on the original mailing matrix at the time of the case reopening, presumably because K & L(a) also possessed an unpaid $49,618.35 pre-petition claim against the instant debtors for which K & L had filed a proof of claim by the previously established claims filing deadline of September 26, 1985, and (b) was a professional during the Chapter 11 phase of the instant case. However, and as K & L concedes, K & L did not file its Claim for $121,545.43 by the aforementioned deadline of September 26, 1985, instead waiting until January 31, 1997, to do so. Unfortunately for K & L, although this Court's November 25, 1996 order authorizing the trustee to request the filing of new proofs of claim is somewhat unclear in certain respects, the intent of that order was that, and it shall be interpreted to mean that, new proofs of claim could only be filed if, and to the extent that, identical proofs of claim had been filed by the previously established claims filing deadline of September 26, 1985. Thus, neither the November 25, 1996 order of this Court, nor the notice that K & L received regarding the reopening of the instant case, operated to make timely K & L's otherwise tardily filed Claim for $121,545.43.

Prior to the initial closing of the instant case, the trustee, on September 27, 1988, distributed $53,207.72, all of which went for payment of administrative expenses. *See* Order of Distribution dated September 27, 1988, submitted as Exhibit C to K & L's Supplemental Brief. At least a portion of the administrative expenses paid pursuant to this distribution were incurred during the Chapter 11 phase of the instant case. *See Id.* Since K & L did not file its Claim until January 31, 1997, K & L, of course, did not share in the distribution of the $53,207.72. However, K & L, prior to September 27, 1988, received payment of interim compensation for its post-petition services in the amount of $52,421.55. It appears that the interim compensation that K & L received, when considered as a percentage of the total post-petition compensation that K & L seeks in this case, exceeds that which was distributed to other Chapter 11 administrative

claimants on September 27, 1988. *See K & L's* Answer to Trustee's Objection to Claim, para. 3. Because of this, K & L asserts, and K & L would appear to be borne out in its assertion, that K & L would not have received any portion of the distribution on September 27, 1988, even had it filed its Claim prior to either said distribution or the claims filing deadline of September 26, 1985.

The trustee disputes that K & L's Claim constitutes an administrative expense at this time because, according to the trustee, (a) K & L's Claim was discharged by virtue of the January 30, 1985 confirmation of the instant debtors' reorganization plan (hereafter the "Plan"), and (b) as a result of said Plan confirmation, K & L now possesses only a general unsecured contractual claim against the debtors as set forth in the Plan. The trustee also contends that K & L should not be permitted to recover on its Claim at this time, either as an administrative expense or as a general unsecured claim, because (a) a provision in the Plan capped any future recovery for professional fees and expenses at $135,000, (b) said Claim was not filed by K & L by the aforementioned September 26, 1985 claims filing deadline, (c) the legal services provided by K & L for which K & L now seeks compensation did not provide a benefit to the debtors' bankruptcy estate, and (d) K & L has not complied with Local Bankruptcy Rule 9016.1 in drafting its Final Fee Application.

The Estate of William E. Knapp (hereafter the "Knapp Estate"), which apparently represents the interests of one of the shareholders of the instant debtors, has also filed a brief in support of the trustee's position. The Knapp Estate, in addition to echoing many of the arguments made by the trustee, contends that this Court should deny K & L's Claim at this time pursuant to 11 U.S.C. § 328(c) because, notwithstanding the approval of K & L's employment in 1983 by the Honorable Joseph Cosetti, K & L was not, throughout its representation of the instant debtors, a disinterested person without an interest that was adverse to the instant bankruptcy estate. The Knapp Estate concedes at this time that K & L disclosed the existence of its unpaid pre-petition claim of $49,-

618.35 to Judge Cosetti in 1983 when K & L's employment application was approved.

For the reasons set forth below, this Court holds that K & L's Claim (a) was not transformed from an administrative expense into a general unsecured claim merely by virtue of the confirmation of the Plan, (b) will not now be subject in any way to the aforementioned $135,000 cap, and (c) may participate, and is entitled to receive a first priority via ˙11 U.S.C. § 726(a)(1), in any distribution of the $800,000 in proceeds that were recently discovered by the trustee to the extent that said Claim is ultimately allowed by this Court, even though said Claim was not filed by K & L by the aforementioned September 26, 1985 claims filing deadline. This Court also rejects (a) the argument of the trustee that K & L's services for which K & L now seeks compensation failed to provide any benefit to the debtors' bankruptcy estate, and (b) the Knapp Estate's request of this Court to deny K & L's Claim pursuant to § 328(c). However, the Court agrees with the trustee that K & L's Final Fee Application fails to even superficially comply with Local Bankruptcy Rule 9016.1. Based on the above, the Court (a) **DIRECTS** K & L to **AMEND** its Final Fee Application within **thirty (30) days** from the date of this opinion so that it complies, if not precisely then at least substantially, with Local Bankruptcy Rule 9016.1, thereby enabling the trustee, the instant debtors, other interested parties, and this Court to ascertain the propriety of K & L's Claim, (b) **OVERRULES** the trustee's objection to K & L's Claim except to the extent that K & L must amend its Final Fee Application so that it substantially complies with Local Bankruptcy Rule 9016.1, and (c) **DEFERS** its decision regarding the ultimate allowance of K & L's Claim as an administrative expense until K & L amends its Final Fee Application so that it substantially complies with Local Bankruptcy Rule 9016.1.

4. Section 4.17 of the Plan provides, in pertinent part, that:
 (a) Upon the confirmation *and substantial consummation* of the Plan ... all Claims against[,] and Interests in[, the instant] Debtors of any nature whatsoever [shall be discharged].

## DISCUSSION

### I. Whether K & L's Claim is entitled to administrative expense treatment notwithstanding the January 30, 1985 confirmation of the Plan?

■ The trustee in the instant case appears to concede, as well she should, that K & L's Claim is of the type that would generally constitute an administrative expense pursuant to 11 U.S.C. § 503(b). Nevertheless, the trustee disputes that K & L's Claim constitutes an administrative expense at this time because, according to the trustee, (a) K & L's Claim was discharged by virtue of the January 30, 1985 confirmation of the Plan, and (b) as a result of said Plan confirmation, K & L now possesses only a general unsecured contractual claim against the debtors as set forth in the Plan. The trustee cites in support of her position the decisions in *In re Benjamin Coal Co.*, 978 F.2d 823 (3rd Cir. 1992), and *In re Penn State Clothing Corp.*, 204 B.R. 161 (Bankr.E.D.Pa.1997). Unfortunately for the trustee, the *Benjamin Coal* decision, which is binding upon this Court, does not support the trustee's position in the instant matter. Furthermore, the *Penn State Clothing* decision, to the extent that it does support the trustee's position, is neither binding upon, nor is its rationale persuasive to, this Court.

■ The Third Circuit's decision in *Benjamin Coal* was predicated not only on the confirmation of a Chapter 11 reorganization plan therein but also on the absence of any unsatisfied condition in said plan regarding the discharge of pre-confirmation claims. *See Benjamin Coal*, 978 F.2d at 827. However, unlike in *Benjamin Coal*, the discharge of pre-confirmation claims in the instant matter is expressly conditioned upon the substantial consummation or successful completion of the Plan, as evidenced both in §§ 4.17 [4] and 5.07 [5] of the Plan itself and in

 (b) Upon the Confirmation Date of the Plan ... all Claims against[,] and Interests in[,] Debtors of any nature whatsoever [shall be discharged], *provided the payments and distributions under the Plan are made, and each of the other of their obligations provided for in the*

paragraph D on page 6 of Judge Cosetti's January 30, 1985 Order Confirming Plan,[6] and said express condition was not satisfied prior to the conversion of the instant case to Chapter 7. This point of distinction between the Third Circuit's decision in *Benjamin Coal* and the instant matter is significant because, pursuant to the plain language of § 1141(d)(1)(A), a pre-confirmation claim against a debtor will not be discharged by virtue of the confirmation of a reorganization plan if said plan or the order confirming said plan expressly provides otherwise. *See* 11 U.S.C.A. § 1141(d)(1)(A) (West 1993) (*"Except as otherwise provided* in . . . [§ 1141(d)(1) ], *in the plan, or in the order confirming the plan,* the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation"). Therefore, the plain language of § 1141(d)(1)(A) and the Third Circuit's decision in *Benjamin Coal,* rather than dictating that the January 30, 1985 confirmation of the Plan operated to transform automatically K & L's Claim from an administrative expense to a general unsecured claim, instead mandate that K & L's Claim retained its administrative priority character.

As for the *Penn State Clothing* decision, this Court agrees with the trustee that the *Penn State Clothing* court did not, in its opinion, indicate whether the reorganization plan therein was devoid of any unsatisfied condition regarding the discharge of pre-confirmation claims. However, that such information was not disclosed in the *Penn State Clothing* opinion does not necessarily mean either that the court in *Penn State Clothing* did not examine the plan and/or confirmation order therein for such a qualification or that said court concluded that such information was inconsequential to the discharge of pre-confirmation claims pursuant to § 1141(d)(1)(A). In fact, for the reasons set forth in the preceding paragraph of this order, this Court cannot imagine that the *Penn State Clothing* court would have either overlooked language in a plan or confirmation order qualifying discharge of pre-confirmation claims or concluded that such information was inconsequential given the clear mandate of § 1141(d)(1)(A). Therefore, this Court presumes that, since the court in *Penn State Clothing* concluded that the pre-confirmation administrative claims therein lost their priority status in accordance with the *Benjamin Coal* decision, the *Penn State Clothing* court must have found that neither the plan therein nor the accompanying confirmation order contained an unsatisfied condition respecting the discharge of pre-confirmation claims. However, if, or to the extent that, the *Penn State Clothing* court did overlook or deem inconsequential such qualifying language therein, this Court cannot follow said decision in that regard for the reasons set forth in the preceding paragraph of this order.

Therefore, K & L's Claim, to the extent that it is ultimately allowed by this Court,

---

Plan are performed, when, as, and to the extent provided for in the Plan . . . .
Chapter 11 Plan for Ammet and SAC dated Jan. 11, 1985, § 4.17, submitted as Exhibit A to K & L's Supplemental Brief (emphasis added).

5. Section 5.07 of the Plan provides, in pertinent part, that:
If Proponents of [the] Plan revoke and withdraw the Plan pursuant to § 5.06, *or if the consummation of the Plan does not occur, the Plan shall be deemed null and void,* and in such event *nothing* contained herein shall be deemed to constitute *a waiver or release of any claims by or against the Debtors* or any other person or to prejudice in any manner the rights of the Debtors in any further proceedings involving such Debtors.
Chapter 11 Plan for Ammet and SAC dated Jan. 11, 1985, § 5.07, submitted as Exhibit A to K & L's Supplemental Brief (emphasis added).

6. Paragraph D on page 6 of Judge Cosetti's January 30, 1985 Order Confirming Plan provides that:

Except as otherwise provided or permitted by the Plan or this Order:
1. The above named Debtors shall be released from all dischargeable debts *upon successful completion of the Plan;*
2. Any judgment heretofore or hereafter obtained in any Court other than this Court shall be null and void as to debts dischargeable under the Bankruptcy Code *upon successful completion of the Plan.*
Judge Cosetti's Order Confirming Plan dated January 30, 1985, p. 6, para. D, submitted as Exhibit B to K & L's Supplemental Brief (emphasis added).

shall retain its administrative expense character.[7]

## II. Whether K & L's Claim is restricted by the $135,000 cap on professional fees and expenses that was imposed pursuant to a provision of the Plan?

■ The trustee also argues that K & L is limited in the amount that it can ultimately recover on its Claim in any event by virtue of the operation of § 2.01 of the Plan, which section provides, in particular, that:

AMMET Investments, Inc., the party willing to make an equity contribution to Debtors, has conditioned its contribution upon, among other things, a requirement that professional fees and expenses to be paid hereunder not exceed $135,000.00, except for fees and expenses up to $5,000.00 incurred by Mary Reitmeyer, Counsel for the Creditors Committee, in objecting to certain claims against Debtors.

*See* Chapter 11 Plan for Ammet and SAC dated Jan. 11, 1985, § 2.01, submitted as Ex. A to K & L's Supplemental Brief. The Court cannot agree with the trustee that § 2.01 of the Plan operates at this time to limit the amount of K & L's Claim, however, because (a) the operation of said § 2.01 was implicitly, if not expressly, conditioned on the making of an equity contribution by an outside investor, which equity contribution was ultimately never made, and (b) the discharge of pre-confirmation claims, including pre-confirmation charges for professional fees and expenses, was conditioned upon the substantial consummation or successful completion of the Plan, neither of which ultimately occurred. *See supra* pp. 151–52. Therefore, K & L's Claim, to the extent that it is ultimately allowed by this Court, will not now be subject in any way to the aforementioned $135,000 cap.

## III. Whether K & L's Claim, because it was filed substantially subsequent to the September 26, 1985 claims filing deadline, must be disallowed entirely?

The trustee contends that K & L's Claim, even if it is entitled to retain its administrative expense character to the extent that it is ultimately allowed by this Court, must nevertheless be disallowed because it was not filed by K & L by the previously established September 26, 1985 claims filing deadline. For reasons set forth in detail below, this Court disagrees with this particular position of the trustee.

■ As an initial matter, this Court concludes that K & L's Claim, even though it will be an administrative expense to the extent that it is ultimately allowed, was nevertheless subject to the September 26, 1985 claims filing deadline imposed pursuant to Fed.R.Bankr.P. 1019(7).[8] This particular conclusion is supported both by (a) the plain language of Fed.R.Bankr.P. 1019(7), which, by imposing the claims filing deadline on all unpaid post-petition pre-conversion claims, necessarily includes within its reach an administrative expense, *see* Fed.R.Bankr.P. 1019(6)–(7), 11 U.S.C.A. (West 1984) (amended 1991); Fed.R.Bankr.P. 1019, 11 U.S.C.A., Advisory Committee Note (West 1984) (Rule 1019(7) *"requires* that claims that arose in the chapter 11 or 13 case be filed within 60 days after entry of the order converting the case to one under chapter 7"), and (b) overwhelming case authority to that effect including, in particular, dicta by the Third Circuit

---

**7.** *Benjamin Coal* was not decided by the Third Circuit until 1992, which means that it was not yet binding law in this circuit at the time of the trustee's Chapter 7 distribution in 1988. Nevertheless, the Court points out that the trustee, in her 1988 distribution, made a partial distribution of $25,238.52 to Chapter 11 administrative claimants, *see* Order of Distribution dated September 27, 1988, submitted as Exhibit C to K & L's Supplemental Brief, which provides additional support for this Court's finding that Chapter 11 administrative claims in the instant case were not discharged by virtue of the January 30, 1985 confirmation of the Plan.

**8.** Paragraph (7) of Fed.R.Bankr.P. 1019 was amended and renumbered as paragraph (6) therein on April 30, 1991. *See* Fed.R.Bankr.P. 1019, 11 U.S.C.A., Advisory Committee Note to 1991 Amendments (West 1998). However, because the instant bankruptcy case was converted to Chapter 7 substantially prior to August 1, 1991, which is the effective date for said amendment, *see Id.,* Fed.R.Bankr.P. 1019(7) as it existed prior to the aforementioned amendment applies in the instant case.

in *Benjamin Coal. See Benjamin Coal,* 978 F.2d at 827 note 1 (the substance of this footnote is dicta because the additional loans made by the inside creditor which are referred to in the footnote are the subject of speculation therein by the Third Circuit, and said loans do not appear to ever have been at issue in that case); *see also In re Johnson,* 901 F.2d 513, 518–21 (6th Cir.1990); *In re Transouth Truck Equipment, Inc.,* 87 B.R. 937, 939 (Bankr.E.D.Tenn.1988); *In re Sea Air Shuttle Corp.,* 168 B.R. 501, 504 (Bankr. D.P.R.1994); *In re West Johnson Corporation,* 96 B.R. 182, 183–84 (Bankr.W.D.Wis. 1988); *contra In re Pro Set, Inc.,* 193 B.R. 812, 816–17 (Bankr.N.D.Tex.1996). However, and as will be seen below, the consequence to K & L of filing its Claim more than eleven years subsequent to the aforementioned September 26, 1985 claims filing deadline is neither automatic disallowance of said Claim nor subordination of said Claim's distribution priority.

If the instant bankruptcy case had been commenced subsequent to October 22, 1994, then K & L's Claim would clearly be entitled to participate, and to also receive a first priority, in any subsequent Chapter 7 distribution (a) provided that K & L could also demonstrate cause for having tardily filed its Claim, and (b) even though K & L's Claim was filed subsequent to the claims filing deadline that was established pursuant to Fed.R.Bankr.P. 1019(7). This conclusion is warranted because the Bankruptcy Code, after amendments made thereto via the Bankruptcy Reform Act of 1994, now provides, for cases filed on or after October 22, 1994, that (a) a court *must, except in Chapter 7 cases,* disallow a claim for distribution purposes if said claim has been tardily filed, *see* 11 U.S.C.A. § 502(b)(9) (West 1998) (a claim shall not be allowed if "proof of such claim is not timely filed, *except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a)* "); *see also infra* note 12, (b) a court may permit an administrative expense claimant to tardily file its request for payment of an administrative expense if cause is shown, after which an administrative expense claim shall be allowed for distribution purposes unless such request is disallowed for reasons other than lack of timeliness, *see* 11 U.S.C.A. § 503(a) (West 1998); 9 *Collier on Bankruptcy,* para. 3002.03[1] at 3002–9 and notes 3–5 (Bender 1998), and (c) such a tardily filed administrative expense claim, if allowed, shall be granted a first priority in a Chapter 7 distribution the same as if said claim had been timely filed. *See* 11 U.S.C.A. § 726(a)(1) (West 1998); 6 *Collier on Bankruptcy,* para. 726.02[1] at 726–6 (Bender 1998); *see also In re Waindel,* 65 F.3d 1307, 1308 (5th Cir.1995) (after referring to the "conflicting [case] authorities [that] have piled up [regarding tardily filed priority claims such as those of the Internal Revenue Service, the 5th Circuit then noted that] . . . Congress fixed the problem for . . . [such] claims in cases filed after October 22, 1994"). However, because the instant bankruptcy case was commenced substantially prior to October 22, 1994, the treatment in Chapter 7 that should be accorded to K & L's Claim is not quite as clear. *See* 6 *Collier on Bankruptcy,* para. 726.02[1] at 726–6 note 3 (pointing out that "[c]ases decided before the 1994 Act [a]re split").

Prior to October 22, 1994, the plain language of the Bankruptcy Code (a) did not require courts to disallow tardily filed claims for distribution purposes (i) in cases other than those in Chapter 7, as is now mandated by § 502(b)(9), nor (b) in Chapter 7 cases, which directive is still essentially lacking given the exception contained in present § 502(b)(9), *see* 11 U.S.C.A. § 502(b) (West 1993) (amended 1994) (language similar to that contained in present subsection (b)(9) did not exist prior to 1994); *see also infra* note 12, (b) did not mandate that courts had to disallow administrative expense claims on the basis that they were tardily filed, *see* 11 U.S.C.A. § 503(a) (West 1993) (amended 1994) (prior to its amendment on October 22, 1994, § 503(a) simply provided that "[a]n entity may file a request for payment of an administrative expense"), and (c) did not deprive tardily filed claims of the kind specified in 11 U.S.C. § 507, such as administrative expenses, of a first priority in a Chapter 7 distribution because § 726(a)(1) did not, as it does now, distinguish between such claims on the basis of whether they were filed timely or tardily. *See* 11 U.S.C.A. § 726(a)(1) (West

1993) (amended 1994).[9] On the basis of the plain language of the aforementioned Bankruptcy Code sections as they existed prior to October 22, 1994, many courts in cases filed prior to October 22, 1994, allowed tardily filed § 507 claims, including tardily filed administrative expense claims, to participate, as well as to receive a first priority, in a Chapter 7 distribution. *See In re Pacific Atlantic Trading Co.*, 33 F.3d 1064, 1065–68 (9th Cir. 1994); *In re Vecchio*, 20 F.3d 555, 557–60 (2nd Cir.1994); *In re Rago*, 149 B.R. 882, 887–91 (Bankr.N.D.Ill.1992); *In re Horner*, 1991 WL 353297 (Bankr.N.D.Cal.1991). Nevertheless, many courts, with respect to bankruptcy cases filed prior to. October 22, 1994, either (a) automatically disallowed § 507 claims, including administrative expense claims, if they were tardily filed, thereby precluding such claims from participating at all in a Chapter 7 distribution, *see Johnson*, 901 F.2d at 522; *In re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101, 104 (7th Cir. 1993); *West Johnson*, 96 B.R. at 185; *Transouth Truck Equipment*, 87 B.R. at 943, or (b) allowed such claims to participate in a Chapter 7 distribution but, instead of receiving first priority in said distribution, subordinated the distribution priority of such claims to a level below that of either (a) timely filed § 507 claims (i.e., subordination to 11 U.S.C. § 726(a)(2) level), *see Sea Air Shuttle*, 168 B.R. at 504–06, or (b) timely filed general unsecured claims (i.e., subordination to 11 U.S.C. § 726(a)(3) level). *See Waindel*, 65 F.3d at 1308 & 1311; *In re Brennan*, 167 B.R. 316, 318 (Bankr.D.Mass.1993); *In re Kragness*, 82 B.R. 553, 556–57 (Bankr.D.Or. 1988). For reasons set forth below this Court concludes that, for bankruptcy cases that were filed prior to October 22, 1994, (a) bankruptcy courts at least possessed discretionary authority to allow tardily filed § 507 claims, including tardily filed administrative expense claims, to participate in a Chapter 7 distribution, and (b) such tardily filed claims, to the extent that they are ultimately allowed, will receive a first priority in any Chapter 7 distribution.[10]

The courts that have automatically disallowed tardily filed § 507 claims in cases that were commenced prior to October 22, 1994, and which were also converted to Chapter 7 from another chapter of the Bankruptcy Code, uniformly have concluded that such a decision is mandated by Fed.R.Bankr.P. 1019. However, these courts have not, and could not have, based that particular conclusion on the plain language of Fed.R.Bankr.P. 1019 because that rule does not now explicitly provide, nor has it ever so provided, for the automatic disallowance of tardily filed unpaid post-petition pre-conversion claims. Instead, these courts appear to have arrived at their aforementioned interpretation of Fed.R.Bankr.P. 1019, at least in part, because (a) Fed.R.Bankr.P. 3002, as it existed prior to April 23, 1996, provided (i) that "[a]n unsecured creditor ... must file a proof of claim ... *in accordance with ... [bankruptcy] rule [3002]* for the claim ... to be *allowed*," *see* Fed.R.Bankr.P. 3002(a), 11 U.S.C.A. (West 1984) (amended 1996) (emphasis added), and (ii) a deadline by which proofs of claim had to be filed, *see* Fed. R.Bankr.P. 3002(c), 11 U.S.C.A. (West 1984) (amended 1996), (b) numerous courts have held that Fed.R.Bankr.P. 3002, prior to its aforementioned amendment, mandated that courts had to automatically disallow any claim in a Chapter 7 case if the corresponding proof of claim was tardily filed, *see, e.g., West Johnson*, 96 B.R. at 183, and (c) Fed. R.Bankr.P. 1019 also contains a claims filing deadline and, additionally, references (i) Fed.

---

**9.** Even though present § 726(a)(1) distinguishes between tardily and timely filed allowed § 507 claims, such distinction is meaningless for distribution priority purposes since § 507 claims are accorded first priority regardless of whether they are tardily filed or not. *See* 11 U.S.C.A. § 726(a)(1) (West 1998).

**10.** This Court points out that the Third Circuit in *Benjamin Coal* did not determine, in its dicta in footnote 1 therein, that tardily filed administrative expense claims may neither participate nor receive a first priority in a Chapter 7 distribution for bankruptcy cases that were filed prior to October 22, 1994. Instead, the Third Circuit, in said dicta, merely pointed out that an administrative expense claim is subject to the claims filing deadline imposed by Fed.R.Bankr.P. 1019 upon the conversion of a bankruptcy case to Chapter 7, without any discussion regarding the ramifications for failure to comply with said deadline. *See Benjamin Coal*, 978 F.2d at 827 note 1 (citing *Johnson*, 901 F.2d at 520).

R.Bankr.P. 3001(a)–(d) prior to the amendment of Fed.R.Bankr.P. 1019 on April 30, 1991, *see* Fed.R.Bankr.P. 1019(7), 11 U.S.C.A (West 1984), and (ii) Fed.R.Bankr.P. 3001(a)–(d) and 3002 after said amendment of Fed. R.Bankr.P. 1019. *See* Fed.R.Bankr.P. 1019(6), 11 U.S.C.A (West 1998). This Court cannot concur with the preceding interpretation of Fed.R.Bankr.P. 1019, however, because that interpretation is predicated upon an interpretation of Fed.R.Bankr.P. 3002, as that rule existed prior to April 23, 1996, that impermissibly conflicts with the Bankruptcy Code as it existed prior to October 22, 1994, since (a) § 502(b), prior to October 22, 1994, did not mandate that courts, for cases either in or outside Chapter 7, had to disallow claims on the basis that they were not timely filed, *see supra* p. 154, and (b) § 726(a)(2)–(3), prior to October 22, 1994, permitted tardily filed allowed unsecured claims to participate in a Chapter 7 distribution, albeit generally subordinated in distribution priority to timely filed allowed unsecured claims, *see* 11 U.S.C.A. § 726(a)(2)–(3) (West 1993), which necessarily suggests that bankruptcy courts at least possessed discretionary authority to allow tardily filed unsecured claims to participate in a Chapter 7 distribution. *See Pacific Atlantic Trading*, 33 F.3d at 1066; *Waindel*, 65 F.3d at 1309; *In re Hausladen*, 146 B.R. 557, 559–61 (Bankr.D.Minn.1992) (en banc); *Vecchio*, 20 F.3d at 559; *Brennan*, 167 B.R. at 317.[11]

Furthermore, Congress amended the Bankruptcy Code on October 22, 1994, to expressly permit (a) the tardy filing of administrative expense requests if cause is shown, *see supra* p. 154, and (b) tardily filed § 507 claims, to the extent that they are allowed, to receive first priority treatment in a Chapter 7 distribution. *See supra* p. 154. This particular amendment convinces this Court that Congress did not ever envision that § 507 claims might automatically be disallowed in a Chapter 7 case for failure to comply with time deadlines imposed by the bankruptcy rules because (a) said amendment of the Bankruptcy Code represents perhaps the best evidence of Congress' intent on the issue prior to October 22, 1994, given that Congress had no reason to change its intent vis-a-vis that particular issue on October 22, 1994, and (b) if Congress had intended for § 507 claims, and administrative expense claims in particular, to be automatically disallowed if they are tardily filed, then Congress certainly would not have amended §§ 503(a) and 726(a)(1) to allow courts to discretionarily permit such tardily filed claims to participate in Chapter 7 distributions.[12]

Similarly, Fed.R.Bankr.P. 3002, which is now explicitly referenced by Fed.R.Bankr.P. 1019(6), *see supra* pp. 155–56, was amended on April 23, 1996, to provide that (a) a proof of claim, rather than needing to be filed *in accordance with Fed.R.Bankr.P. 3002* in or-

11. Some, if not all, of the courts in the cases that are cited immediately prior to this footnote went so far as to hold that the Bankruptcy Code, prior to October 22, 1994, failed to provide bankruptcy courts with any authority to disallow any claims on the basis that they were tardily filed. This Court need not ascertain whether these courts were correct in that regard because this Court holds, at a minimum, that bankruptcy courts, prior to October 22, 1994, at least possessed the discretionary authority to allow tardily filed claims to participate in a Chapter 7 distribution.

12. The editors in *Collier on Bankruptcy* conclude that § 502(b)(9) was added, and § 503(a) was amended, on October 22, 1994, so as to overrule case law holding that, prior to such changes in the Bankruptcy Code, courts lacked the authority to disallow claims on the basis that they were tardily filed. *See* 4 *Collier on Bankruptcy*, para. 502.03[10][a]–[c] at 502–54 to 56; para. 503.02[2] at 503–9 note 7. However, this Court is somewhat skeptical of the accuracy of this particular conclusion with respect to cases in

Chapter 7 because—and as the editors in *Collier on Bankruptcy* subsequently point out themselves—courts, after October 22, 1994, now actually appear to lack, for the most part, even the discretionary authority to disallow claims for distribution purposes in Chapter 7 cases on the basis that they are tardily filed. *See* 11 U.S.C.A. §§ 502(b)(9) (a court may disallow a claim if "proof of such claim is not timely filed, *except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a)* "); 4 *Collier on Bankruptcy*, para. 502.03[10][c] at 502–55. In fact, it would appear that the only types of claims that a court can even discretionarily disallow for distribution purposes in a Chapter 7 case subsequent to October 22, 1994, are (a) administrative expense claims that are tardily filed without any cause for such tardy filing, and (b) other claims for which proofs thereof are filed subsequent to the date of the trustee's Chapter 7 distribution.

der for a claim to be allowed, needs merely to be filed for a claim to be allowed, *see* Fed.R.Bankr.P. 3002(a), 11 U.S.C.A. (West 1998), and (b) a proof of claim no longer needs to be filed within ninety days of the first date set for the creditors' meeting but said proof of claim will only be timely if it is filed by said date. *See* Fed.R.Bankr.P. 3002(c), 11 U.S.C.A. (West 1998). The purpose of this amendment was "to clarify that the effect of filing a proof of claim after the expiration of the time prescribed in Rule 3002(c) is governed by § 502(b)(9) of the Code, rather than by ... [R]ule [3002]." Fed.R.Bankr.P. 3002, 11 U.S.C.A., Advisory Committee Note to 1996 Amendments (West 1998). The passage of this particular amendment convinces this Court that the promulgators of the bankruptcy rules (a) recognized that Fed.R.Bankr.P. 3002 and, indirectly Fed.R.Bankr.P. 1019, had been misinterpreted in the past, and could continue to be misinterpreted in the future, so as to impermissibly conflict with the Bankruptcy Code, and (b) did not anticipate that Fed. R.Bankr.P. 1019 and 3002, as they were originally written, would subsequently be interpreted as mandating that courts had to automatically disallow tardily filed claims in a Chapter 7 case. *See also supra* note 12. Therefore, this Court cannot agree that, with respect to cases filed prior to October 22, 1994, tardily filed § 507 claims, including tardily filed administrative expense claims, must automatically be disallowed and thereby precluded from participating at all in a Chapter 7 distribution.

The courts that have allowed tardily filed § 507 claims in cases commenced prior to October 22, 1994, to participate in a Chapter 7 distribution, but then subordinated such tardily filed § 507 claims' distribution priority to a level below that of either timely filed § 507 claims (i.e., subordination to § 726(a)(2) level) or timely filed general unsecured claims (i.e., subordination to § 726(a)(3) level), have premised said subordination on (a) an additional conclusion that tardily filed § 507 claims are merely a subset of tardily filed unsecured claims whose distri-

bution priority is generally subordinated to the level at § 726(a)(3), *see Waindel,* 65 F.3d at 1311; *Brennan,* 167 B.R. at 318, and (b) the fact that a distinction is not made in § 726(a)(3) between unsecured § 507 claims and general unsecured claims. *See Waindel,* 65 F.3d at 1310. This Court cannot concur with these courts either, however, because their rationale ignores the fact that § 726(a)(1), as it existed prior to October 22, 1994, simply did not distinguish between timely and tardily filed § 507 claims while § 726(a)(2)–(3) does so distinguish. Furthermore, and perhaps more importantly, the Court can only surmise that Congress' position prior to October 22, 1994 was that tardily filed allowed § 507 claims shall receive first priority treatment in a Chapter 7 distribution, and that Congress amended § 726(a)(1) on October 22, 1994, to make that particular position clear, because the Court cannot conceive of any reason why Congress would have changed its position vis-a-vis tardily filed allowed § 507 claims on October 22, 1994. Therefore, this Court cannot agree that, with respect to cases filed prior to October 22, 1994, the Chapter 7 distribution priority of tardily filed allowed § 507 claims, including tardily filed allowed administrative expense claims, must be subordinated to a level below that of either timely filed § 507 claims or timely filed general unsecured claims.

■ Having determined that, for bankruptcy cases that were filed prior to October 22, 1994, tardily filed administrative expense claims may discretionarily be permitted to participate in a Chapter 7 distribution,[13] and that they shall receive a first priority to the extent that they are allowed for such distribution purposes, this Court also holds that K & L's Claim in particular, to the extent that it is ultimately approved by this Court, may participate, and is entitled to receive a first priority via § 726(a)(1), in any distribution of the $800,000 in proceeds that were recently discovered by the trustee in 1995. Subject to this Court's approval on other grounds, the Court discretionarily allows K & L's Claim for Chapter 7 distribution purposes under

**13.** Of course, for bankruptcy cases commenced on or after October 22, 1994, the Court can, pursuant to §§ 502(b)(9) and 503(a), deny an

administrative claimant the opportunity to tardily file its claim if said administrative claimant does not demonstrate cause for its tardy filing.

the present circumstances because (a) K & L does not seek a disgorgement of funds previously distributed by the trustee in 1988,[14] (b) a distribution of the $800,000 that the trustee discovered in 1995 has not yet occurred, (c) K & L, upon being informed of the trustee's discovery of the $800,000 in additional estate assets, promptly filed its Claim, (d) K & L knew, based upon the funds that existed in the instant debtors' bankruptcy estate around the time of the September 26, 1985 claims filing deadline, that it certainly would not then have received a distribution of funds in addition to that which it had already received via interim distributions, and (e) K & L was clearly unaware of the $800,000 in funds that the trustee would ultimately discover some ten years later in 1995.

■ The Court also wishes to make clear that it may equitably subordinate a tardily filed allowed § 507 claim for distribution purposes depending upon the circumstances pursuant to 11 U.S.C. § 510(c). *See Vecchio,* 20 F.3d at 560; *Rago,* 149 B.R. at 889–90. However, such equitable subordination is inappropriate in the instant matter for precisely the reasons given in support of this Court's discretionary decision to permit K & L's Claim, to the extent that it is ultimately approved by this Court, to participate in any distribution of the $800,000 in recently-discovered proceeds.[15] Of course, because K & L's Claim arose prior to the conversion of the instant bankruptcy case to Chapter 7, the Chapter 7 distribution priority of K & L's Claim, to the extent that it is ultimately allowed, will be subordinated to that of any post-conversion administrative expenses. *See* 11 U.S.C.A. § 726(b) (West 1998).

## IV. *Whether K & L's Claim should be completely disallowed on the basis that the legal services provided by K & L for which K & L now seeks compensation did not provide a benefit to the debtors' bankruptcy estate?*

The trustee also contends that K & L's Claim should be completely disallowed be-cause, the trustee appears to contend, the services for which K & L now seeks to paid from the estate did not, in retrospect, provide the estate with any tangible benefit. As support for this argument, the trustee (a) appears to argue that a professional, pursuant to 11 U.S.C. § 330(a), may not be compensated from a bankruptcy estate unless that professional's services, in retrospect, have provided an actual benefit to the estate, (b) asserts that K & L, by formulating and proposing a reorganization plan on behalf of the instant debtors, thereby failed to provide a benefit to the bankruptcy estate because another plan other than the one proposed by K & L was ultimately confirmed while the instant case was in Chapter 11, and (c) asserts that K & L, by successfully seeking conversion of the instant case to Chapter 7 on behalf of the instant debtors, thereby benefitted only the debtors and not the bankruptcy estate. This Court must reject the trustee's position for several reasons and, thus, cannot disallow K & L's Claim completely on the basis that K & L's services failed to provide any benefit to the instant bankruptcy estate.

■ First, the Court cannot agree with the trustee to the extent that she argues that a professional, pursuant to § 330(a), may only be compensated from a bankruptcy estate if, in retrospect, said professional's services have actually provided the estate with a tangible benefit. The Court certainly agrees, as it must, that a professional, pursuant to § 330(a), can only recover compensation from a bankruptcy estate if, and to the extent that, said professional's services are necessary to the estate. *See* 11 U.S.C.A. § 330(a) (West 1993 & Supp.1998). Furthermore, this Court is well aware that courts have alternatively described the "necessity of services" requirement in § 330(a) as a requirement that said services bestow a benefit upon the estate.

---

14. As an aside, the Court wishes to make clear that, had K & L sought a disgorgement by other distributees of funds that the other distributees had received from the trustee's prior Chapter 7 distribution, the Court would have summarily denied such a request.

15. The Court notes that, even were it to equitably subordinate K & L's Claim for distribution purposes, the Court would not likely subordinate K & L's Claim below any unsecured claims that might be possessed by the shareholders of the instant debtors.

However, the plain language of § 330(a) as it read prior to its amendment on October 22, 1994—and this Court must resolve the instant matter by reference to § 330(a) prior to its amendment in 1994 since said amendment does not apply to cases, such as the instant bankruptcy case, that are commenced prior to October 22, 1994—did not direct a bankruptcy court to determine or evaluate the necessity of a professional's services from the viewpoint subsequent to the performance of such services. Therefore, "[t]he majority of courts have determined the 'necessity' of particular services from the perspective of the time that the services were rendered rather than based on hindsight after the services had been performed." 3 *Collier on Bankruptcy*, para. 330.04[1][b][iii] at 330–32 (Bender 1998). This Court believes that the majority approach is not only the more well-reasoned one but also the correct interpretation of Congress' intent, particularly given that said approach "is the approach [that is] now codified in [present] section 330(a)(3)(C)," *Id.*, as well as in present § 330(a)(4)(A)(ii)(I). *See Id.* at para. 330.04[5][c][i] at 330–54. Additionally, the Third Circuit decision in *In re Engel*, 124 F.3d 567 (3rd Cir.1997), is not inconsistent with the majority approach since the Third Circuit in *Engel* expressly declined to comment on when the benefit to the estate must be measured. *See Engel*, 124 F.3d at 575 note 23 ("The issue of when that benefit should be measured, i.e., after the services have been performed or at the time they are undertaken, need not concern us in this case"). Therefore, this Court must evaluate the necessity of, or ascertain the presence of a benefit bestowed upon the instant bankruptcy estate by, K & L's services from the perspective of the time that K & L actually rendered said services.

■■■ After perusing K & L's Final Fee Application, this Court must conclude that K & L, pursuant to § 330(a), may be compensated from the instant bankruptcy estate for many of the services that K & L furnished during the Chapter 11 phase of the instant bankruptcy case. The Court must conclude as it does because it finds that many of the services performed by K & L, when evaluated from the perspective of the time at which said services were undertaken, were reasonably likely to, and thus actually did, benefit the instant bankruptcy estate. In particular, it would be improper to deny K & L any reward of compensation under § 330(a) for the efforts that K & L took in furtherance of the confirmation of the plan that it proposed simply because that particular plan was ultimately not confirmed. Instead, this Court must conclude that K & L should receive some compensation for these particular services because, when said services were undertaken by K & L, they had a strong likelihood of benefitting the instant bankruptcy estate. Therefore, the fact that the plan which K & L proposed was ultimately not confirmed, while perhaps relevant to the amount of compensation that K & L will ultimately recover for said services, simply does not operate to bar recovery of compensation completely for said services. *See In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D.Pa.1994); *In re Spanjer Brothers, Inc.*, 191 B.R. 738, 757 (Bankr.N.D.Ill.1996). The Court will defer consideration of the trustee's assertion that K & L, by successfully seeking conversion of the instant case to Chapter 7 on behalf of the instant debtors, thereby benefitted only the debtors and not the bankruptcy estate because (a) K & L has not had an opportunity to respond to this particular assertion, and (b) the Court cannot sufficiently assess, at this time, whether such efforts by K & L, when they were originally undertaken, were reasonably likely to benefit the instant bankruptcy estate. However, and quite clearly, even if this particular assertion by the trustee is determined to be well-founded, it cannot support a decision to not award any compensation to K & L for K & L's other efforts on behalf of the instant debtors.

While the Court concludes that K & L is entitled to receive compensation from the instant bankruptcy estate for at least a portion of the services that are the subject of its Final Fee Application, the Court wishes to make clear that some portion of the time for which K & L seeks compensation will likely be excised. In particular, K & L appears to have billed for time spent by multiple professionals on the same function, which time may

not be compensated entirely if, and to the extent, that such time (a) was expended purely for the education of certain of said professionals, *see Jefsaba*, 172 B.R. at 800–01, or (b) cannot otherwise be justified. *See Id.* at 801. The Court will defer resolution of these particular issues until K & L amends its Final Fee Application as directed in a subsequent portion of this opinion.

## V. Whether this Court should deny K & L's Claim because K & L was not a disinterested person without an adverse interest when it provided services during the Chapter 11 phase of the instant bankruptcy case?

The Knapp Estate contends that this Court should deny K & L's Claim at this time because, notwithstanding the approval of K & L's employment in 1983, K & L was not, throughout its representation of the instant debtors, a disinterested person without an interest that was adverse to the instant bankruptcy estate. As the vehicle for such denial of K & L's Claim the Knapp Estate cites § 328(c), which provides, in pertinent part, that, with a few exceptions not relevant to the instant matter:

> the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 . . . of this title if, at any time during such professional person's employment under section 327 . . . of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C.A. § 328(c) (West 1993).

■■■ The Knapp Estate is certainly correct that K & L was not a "disinterested person" within the meaning of the Bankruptcy Code, either in 1983 when K & L commenced its post-petition representation of the instant debtors, or thereafter, because K & L possessed an unpaid pre-petition claim against the instant debtors for $49,-618.35. *See* 11 U.S.C.A. § 101(14)(A) (West 1993). As a creditor of the instant debtors, K & L also necessarily possessed an interest

adverse to the instant bankruptcy estate. Unfortunately for the Knapp Estate, "[t]he decision whether or not to deny fees to a professional who is not disinterested is [not automatic under § 328(c) but instead is] within the discretion of the bankruptcy court." 3 *Collier on Bankruptcy*, para. 328.05[2] at 328-30 (Bender 1998); *see also In re XGW Excavating Co., Inc.*, 111 B.R. 469, 471–73 (Bankr.D.N.J.1990); *Gray v. English*, 30 F.3d 1319, 1323–25 (10th Cir. 1994); *In re Diamond Mortgage Corporation of Illinois*, 135 B.R. 78, 96–98 (Bankr. N.D.Ill.1990). Furthermore, "[b]ecause the denial of compensation and reimbursement of expenses after services have been performed may be draconian and inherently unfair, th[e] sanction [in § 328(c) ] should not be rigidly applied in the absence of actual injury or prejudice to the debtor's estate." 3 *Collier on Bankruptcy*, para. 328.05[4] at 328-34. Finally, the Third Circuit's decision in *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138 (3rd Cir.1994), which decision is cited by the Knapp Estate as supportive of its position, is not inconsistent with the aforementioned case authority regarding a bankruptcy court's discretionary authority under § 328(c). *See Price Waterhouse*, 19 F.3d at 142.

■■■ This Court concludes that it would not, at this juncture, be equitable to deny, *in toto*, K & L's request for compensation for services that K & L rendered to the instant debtors post-petition because (a) K & L, as the Knapp Estate concedes, disclosed the existence of its unpaid pre-petition claim in 1983 when Judge Cosetti approved K & L's employment application, and (b) the nature and extent of K & L's adverse interest, of which all the parties and Judge Cosetti were aware in 1983, did not apparently change throughout K & L's employment. Additionally, this Court can neither disturb nor challenge the propriety of Judge Cosetti's decision to approve K & L's employment as counsel for the instant debtors given that (a) K & L's employment ended in 1985, (b) Judge Cosetti's decision, while not supported by the plain language of 11 U.S.C. § 327(a) as it then existed, was nevertheless supported by existing case authority, and (c) the

Third Circuit's decision in *Price Waterhouse*, which is contrary to Judge Cosetti's 1983 decision regarding K & L's employment application, was not rendered until 1994. Therefore, this Court, in exercising its discretion under § 328(c), declines to deny K & L's Claim at this time on the basis that K & L was not, throughout its representation of the instant debtors, a disinterested person.

## VI. Whether K & L has complied with the requirements of Local Bankruptcy Rule 9016.1 and, if not, what are the ramifications of noncompliance with said rule?

The trustee asserts that K & L has not complied with the requirements of Local Bankruptcy Rule (hereafter "LBR") 9016.1 because K & L's Final Fee Application presents, for each associate of K & L that performed services relevant to the instant case, time entries that (a) are compiled on a weekly rather than daily basis, which violates LBR 9016.1(5)(A)(1), *see* Loc.R.Bankr.P. 9016.1 (Bankr.W.D.Pa.) (West 1998), (b) lump together multiple tasks instead of listing each task separately, which also violates LBR 9016.1(5)(A)(1), *see Id.*, and (c) fail to identify the subject matter of meetings, phone calls, correspondence, hearings or trials, or pleadings involved, which violates LBR 9016.1(5)(A)(2)–(4). *See Id.* K & L concedes that, at least in some instances, it has not strictly complied with LBR 9016.1. However, K & L counters by arguing that its Final Fee Application need not strictly comply with LBR 9016.1 because (a) all of the time entries in its Final Fee Application were made prior to September 8, 1987, which is the effective date for LBR 9016.1, (b) LBR 9016.1(5)(A)(5) relaxes compliance with LBR 9016.1 for time entries that were made prior to the effective date of LBR 9016.1, (c) K & L, in drafting its Final Fee Application, "was forced to rely on thirteen year old billing records ... [which constitute] the best information available regarding the professional services rendered by [K & L]," and (d) a failure to strictly comply with LBR 9016.1 should not, in any event, deprive a claimant of reasonable compensation but rather should only result in a disallowance of unnecessary or unreasonable compensation requests.

Therefore, K & L contends that the time entries contained in its Final Fee Application provide this Court with sufficient information to evaluate the reasonableness of K & L's compensation request, particularly in light of the aforementioned relaxed standard and the difficulty that K & L necessarily experienced in assembling said application.

 This Court, after having browsed K & L's Final Fee Application and considered the various arguments made by the parties, must agree with the trustee that K & L's Final Fee Application is significantly deficient in each of the respects that are identified by the trustee. This Court also concludes that the deficiencies operate to prevent both the trustee and this Court from fully evaluating the reasonableness of K & L's billing in this case, and that without the ability to properly undertake such an evaluation, the trustee and this Court are left to conclude that K & L has unreasonably billed in many instances.

 The Court, in deciding as it does, recognizes and accepts several of the aforementioned assertions that K & L makes in defense of its Final Fee Application. In particular, the Court agrees with K & L that (a) all of the time entries in its application precede the effective date of LBR 9016.1, (b) as a consequence, and pursuant to LBR 9016.1(5)(A)(5), said time entries may thus be evaluated under a somewhat relaxed standard, *see* Loc.R.Bankr.P. 9016.1 (Bankr. W.D.Pa.), and (c) the purpose of compliance with LBR 9016.1 is not to deprive claimants of reasonable compensation but rather only to "protect the [bankruptcy] estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *See, e.g., In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 844 (3rd Cir.1994). However, the Court points out that the foregoing do not entirely relieve a fee applicant such as K & L from the requirements contained in LBR 9016.1. Furthermore, it appears that, for the most part, the information requirements contained in LBR 9016.1(5)(A)(1)–(4) merely reflect that detail which has generally been required of fee applications that are

filed in this circuit, *see Jefsaba,* 172 B.R. at 801 (citing *In re Meade Land and Development Co., Inc.,* 527 F.2d 280, 283 (3rd Cir. 1975), for the proposition that "[i]t is well-settled in th[e Third C]ircuit that only time entries separately listed and explained in detail are compensable"), which indicates to this Court that any permissible relaxation of the requirements that are contained in LBR 9016.1(5)(A) can only be minimal. Moreover, that K & L faced the unenviable task of piecing together its fee application from old billing records cannot significantly sway this Court's decision given that K & L, if it wished, could have filed said application many years prior to 1998. Therefore, this Court is constrained to find that, notwithstanding K & L's contrary assertion, and even after having perused K & L's time entries under a somewhat relaxed standard, many of the time entries contained in K & L's Final Fee Application are not sufficiently specific such that this Court can properly evaluate their reasonableness.

Therefore, the Court determines that the best course of action is for, and the Court thus **DIRECTS,** K & L to **AMEND** its Final Fee Application within **thirty (30) days** from the date of this opinion so that it complies, if not precisely then at least substantially, with LBR 9016.1, thereby enabling the trustee, the instant debtors, other interested parties, and this Court to ascertain the propriety of K & L's Claim. K & L's amended Final Fee Application will subsequently be considered in accordance with the procedures outlined in LBR 9016.2. If K & L fails to satisfactorily amend its Final Fee Application in a timely manner, then the Court will undertake to evaluate the application in its present state. However, the Court warns K & L at this time that a significant portion of the time for which K & L presently seeks compensation will almost certainly be excised if an amendment to the Final Fee Application is not forthcoming.

### CONCLUSION

K & L's Claim (a) was not transformed from an administrative expense into a general unsecured claim merely by virtue of the confirmation of the Plan, (b) will not now be subject in any way to the $135,000 cap imposed by the Plan, and (c) may participate, and is entitled ·to receive a first priority via 11 U.S.C. § 726(a)(1), in any distribution of the $800,000 in proceeds that were recently discovered by the trustee to the extent that said Claim is ultimately allowed by this Court, even though said Claim was not filed by K & L by the September 26, 1985 claims filing deadline. K & L's Claim will also not be disallowed (a) completely on the basis that K & L's services failed to provide any benefit to the instant bankruptcy estate because said services, in fact, did provide the estate with some benefit, or (b) pursuant to § 328(c).

However, the Court agrees with the trustee that K & L's Final Fee Application fails to even superficially comply with Local Bankruptcy Rule 9016.1. Therefore, the Court (a) **DIRECTS** K & L to **AMEND** its Final Fee Application within **thirty (30) days** from the date of this opinion so that it complies, if not precisely then at least substantially, with Local Bankruptcy Rule 9016.1, thereby enabling the trustee, the instant debtors, other interested parties, and this Court to ascertain the propriety of K & L's Claim, (b) **OVERRULES** the trustee's objection to K & L's Claim except to the extent that K & L must amend its Final Fee Application so that it substantially complies with Local Bankruptcy Rule 9016.1, and (c) **DEFERS** its decision regarding the ultimate allowance of K & L's Claim as an administrative expense until K & L amends its Final Fee Application so that it substantially complies with Local Bankruptcy Rule 9016.1.

### ORDER OF COURT

**AND NOW,** this **22nd day** of **December, 1998,** upon consideration of the Proof of Claim for Administrative Expenses filed on January 31, 1997, by Kirkpatrick & Lockhart (hereafter "K & L"), which proof of claim expressly represents K & L's request for payment of an administrative expense of $121,545.43 for post-petition legal services provided by K & L to the above-captioned debtors prior to the conversion of the instant case from Chapter 11 to Chapter 7 on March 11, 1985; and upon consideration of the Chapter 7 trustee's objection to K & L's

aforementioned administrative expense claim; and subsequent to the reopening of the instant bankruptcy case on August 1, 1995, so that the trustee could distribute approximately $800,000 in bankruptcy estate assets that she had discovered subsequent to the closing of the instant case on September 20, 1989; and upon consideration of briefs filed by the parties in support of their respective positions; as well as upon consideration of a brief in support of the trustee's position by the Estate of William E. Knapp (hereafter the "Knapp Estate"), which apparently represents the interests of one of the shareholders of the instant debtors; and after an examination of several of the many documents previously filed in the instant case including, in particular, (a) the instant debtors' reorganization plan that was confirmed on January 30, 1985 (hereafter the "Plan"), and (b) Judge Cosetti's Order Confirming Plan, which was also dated January 30, 1985; and subsequent to appropriate notice and hearings on the matter held on April 7, 1998, and July 29, 1998; and in accordance with the accompanying memorandum opinion of this Court dated **December 22, 1998**, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. K & L's Claim was not transformed from an administrative expense into a general unsecured claim merely by virtue of the confirmation of the Plan.

2. K & L's Claim will not now be subject in any way to the $135,000 cap imposed by the Plan.

3. K & L's Claim may participate, and is entitled to receive a first priority via 11 U.S.C. § 726(a)(1), in any distribution of the $800,000 in proceeds that were recently discovered by the trustee to the extent that said Claim is ultimately allowed by this Court, even though said Claim was not filed by K & L by the September 26, 1985 claims filing deadline.

4. K & L's Claim will not be disallowed completely on the basis that K & L's services failed to provide any benefit to the instant bankruptcy estate because said services, in fact, did provide the estate with some benefit.

5. K & L's Claim will not be disallowed pursuant to 11 U.S.C. § 328(c).

6. K & L's Final Fee Application fails to even superficially comply with Local Bankruptcy Rule 9016.1.

7. K & L shall **AMEND** its Final Fee Application within **thirty (30) days** from the date of this order so that it complies, if not precisely then at least substantially, with Local Bankruptcy Rule 9016.1, thereby enabling the trustee, the instant debtors, other interested parties, and this Court to ascertain the propriety of K & L's Claim.

8. The trustee's objection to K & L's Claim is **OVERRULED** except to the extent that K & L must amend its Final Fee Application so that it substantially complies with Local Bankruptcy Rule 9016.1.

9. The decision regarding the ultimate allowance of K & L's Claim as an administrative expense shall be **DE-FERRED** until K & L amends its Final Fee Application so that it substantially complies with Local Bankruptcy Rule 9016.1.

**IN SUMMARY,** K & L shall **AMEND** its Final Fee Application within **thirty (30) days** from the date of this order, the trustee's objection to K & L's Claim is **OVERRULED** except to the extent that K & L must amend its Final Fee Application, and the decision regarding the ultimate allowance of K & L's Claim as an administrative expense shall be **DEFERRED.**