EDITH H. JONES, Circuit Judge:
The Internal Revenue Service (IRS) appeals the district court’s and bankruptcy court’s disallowance of a tardily filed claim for unpaid taxes, penalties and interest in the debtors’ Chapter 13 case. The lower courts held that tardily filed priority claims are disallowed from recovery under Bankruptcy Rule 3002 and that IRS’s claim was not a mere amendment of another claim it filed in the case. Because IRS apparently finds it difficult to comply with the bankruptcy rules’ *1308 90-day “bar date” for filing proofs of claim, these questions have arisen repeatedly in recent years, and conflicting authorities have piled up. See, e.g., United States v. Chavis (In re Chavis), 47 F.3d 818 (6th Cir.1995); United States v. Towers (In re Pacific Atlantic Trading Co.), 33 F.3d 1064 (9th Cir.1994); United States v. Vecchio (In re Vecchio), 20 F.3d 555 (2nd Cir.1994); Internal Revenue Service v. Century Boat Co. (In re Century Boat Co.), 986 F.2d 154 (6th Cir.1993). Fortunately, Congress fixed the problem for tax claims in cases filed after October 22, 1994.[1] As for the many pre-amendment cases, however, this court sides with the analysis that holds tardy claims to be tardy, not disallowed, but potentially entitled to no more than lower-priority recovery from the debt- or’s estate. 11 U.S.C. § 726(a)(3). In this case, our result reverses the judgments of the lower courts insofar as the “allowance” of IRS’s late-filed claim is concerned, but we also hold IRS was not entitled to priority claim distribution rights and that its late claim was not a permissible amendment to an earlier, timely claim. The lower court judgments are technically reversed in part and affirmed in part, but IRS recovers nothing on its tardy claim.
I.
BACKGROUND
Patrick and Susan Waindel filed a Chapter 13 petition on August 5, 1991. Before this filing, the IRS notified them that it was disallowing certain deductions they had taken for the tax years 1982 through 1986. The Waindels listed on the Chapter 13 Statement filed with their petition an estimated tax liability for 1990 of $20,000, and estimated and disputed tax liabilities for 1982 and 1983 of $16,850 and $9,500 respectively. No explanation has been offered as to why the debtors did not schedule estimated and disputed tax liabilities for the years 1984 through 1986.
The bankruptcy court issued a notice of the § 341 meeting of creditors specifying that all proofs of claims were to be filed prior to February 4, 1992 in order to be allowed and paid. Shortly after receiving this notice, the IRS filed a timely proof of claim for taxes, penalties, and interest for 1990 in the amount of $20,796.52.[2] On February 6, 1992, two days after the filing deadline, the IRS filed an “amended” proof of claim asserting a total claim of $73,781.79 spanning the years 1982, 1983, 1984, 1985, 1986, and 1990.[3]
Debtors objected to the amended proof of claim arguing that it was actually a new claim that must be disallowed because it was not timely filed pursuant to Bankruptcy Rule 3002(c). Prior to trial, the parties stipulated that deficiencies for all of the tax years in question totalled $71,151.98. At trial, the IRS offered uncontroverted testimony that the amended proof of claim was actually prepared on January 6,1992 — well in advance of the February 4 deadline. Unforeseen personnel changes were blamed for the tardiness of the actual filing.
The bankruptcy court ruled that because the amended proof of claim was not of the same generic origin as the original proof of claim, it did not properly qualify as an amendment, but was actually a new claim. The bankruptcy court further held that the bar date set forth in Rule 3002(c) precluded allowance of any claims filed after that bar date.[4] The district court affirmed the decision of the bankruptcy court. The IRS now appeals.
II.
DISCUSSION
Before the enactment of the Bankruptcy Code in 1978, section 57n of the 1898 Bankruptcy Act (hereinafter “the Act”) *1309 barred late-filed claims from sharing in distributions of the debtor’s estate. The Wain-dels assert that the bar date concept was carried over into the Code. IRS argues that to the contrary, the Code eschewed the bar date as a complete bar to recovery and opted instead for a system that separates claims into two categories, timely and tardy. It is of course not enough to posit that Congress meant to preserve the certitude of the bar date. One must rely upon the text of the Code, if it is plain, as the definitive guide to congressional intent. See United States v. Ron Pair Enterprises, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).
The text of the Code does not support a bar date as a complete bar to recovery. As other courts have noted, sections 501, 502 and 726 are the Code provisions that respectively concern the filing of claims, their allowance, and the priority of distribution to claimants. Although none of these provisions sets a bar date or depends for its efficacy on a total bar, the imposition of deadlines for filing claims is clearly contemplated. Section 501(c) authorizes a debtor or the trustee to file a proof of claim for a creditor who has not timely filed in his own behalf. Section 726 permits late-filed claims to share in the debtor’s estate in two circumstances, differentiating according to whether the claimant had sufficient notice of the bankruptcy to permit a timely filing. 11 U.S.C. § 726(a)(2)(C), (a)(3). While § 502(b) lists various exceptions to the “allowance” of claims against the debtor, however, untimeliness is not among them. The Code therefore renders timely filing of claims significant for purposes other than “allowance.”
The concept of a bar date as preventing recovery from the debtor’s estate arises not from the Code but from Bankruptcy Rule 3002(a), which requires timely filing of a claim for it to be “allowed.” Keying “allowance” to timeliness is a vestige of practice under the 1898 Bankruptcy Act; the original authors of the Bankruptcy Rules more or less transcribed the absolute bar date rule based on the Act into Rule 3002 accompanying the Code. See Rule of Practice and Procedure in Bankruptcy 3002, Advisory Committee’s Note; 3 Collier on Bankruptcy ¶ 3002.02 at 3002-6 (15th ed. 1993). The Advisory Committee, as delegate of the Supreme Court’s bankruptcy rulemaking power, had no authority to write a rule inconsistent with the Code. 28 U.S.C. § 2075.[5] Nevertheless, to the extent that Rule 3002(a) declares every untimely filed claim to be disallowed, the Rule impermissibly conflicts with the Code. We agree with the courts, cited above, that so hold.
In order to read Rule 3002(a) consistently with Code §§ 501, 502 and 726, the bankruptcy rule must be viewed as providing a dividing line between timely and tardy claims, rather than a flat ban on the allowance of late-filed claims. Accord Vecchio, 20 F.3d at 559 (“[A] rule of procedure that disallows claims for untimeliness cannot stand.”); In re Pac. Trading Co., 33 F.3d 1064, 1067 (9th Cir.1994); see also Cisneros v. United States, 994 F.2d 1462, 1465 (9th Cir.1993).[6]
In most cases, the inartful language of Rule 3002(a) makes no practical difference. Section 726 sets forth the order for payment *1310 of claims. The general scheme requires payment of priority claims followed by unsecured claims and, if any money remains, payment of late claims, various types of penalties and interest. There will hardly ever be surplus funds available to the estate after payments to the first two tiers of creditors in a Chapter 7 ease so as to enable payments upon untimely general unsecured claims pursuant to section 726(a)(3). In Chapter 11 and 13 cases, where section 726 furnishes a baseline for distribution priorities under plans,[7] the plans can incorporate parallel treatment for late-filed claims.
Particular problems have arisen however, in regard to untimely priority claims. See United States v. Chavis (In re Chavis), 47 F.3d 818 (6th Cir.1995); United States v. Towers (In re Pacific Atlantic Trading Co.), 33 F.3d 1064 (9th Cir.1994); United States v. Vecchio (In re Vecchio), 20 F.3d 555 (2nd Cir.1994); Internal Revenue Service v. Century Boat Co. (In re Century Boat Co.), 986 F.2d 154 (6th Cir.1993). More precisely, the question is what consequences, if any, attach to tardiness in filing a claim that would otherwise be entitled to priority distribution. IRS argues here that because Rule 3002(a) does not “disallow” its late-filed claim, there is no bar date at all for priority claims. The interpretation of the IRS rests on section 726, which provides in pertinent part as follows:
§ 726. Distribution of property of the estate
(a) Except as provided in section 510 of this title, property of the estate shall be distributed—
(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;
(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—
(A) timely filed under section 501(a) of this title;
(B) timely filed under section 501(b) or 501(c) of this title; or
(C) tardily filed under section 501(a) of this title, if—
(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
(ii) proof of such claim is filed in time to permit payment of such claim;
(3)third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
The late claim filed by the IRS for back taxes owed by the Waindels is a priority unsecured claim under section 507(a)(7). Section 507 claims ordinarily receive first-tier distribution status as specified in section 726(a)(1).[8] Section 726(a)(1), in contrast to § 726(a)(2), draws no distinction based upon the timeliness of the filing of the priority claim. IRS infers from the omitting of express subordination of late-filed priority claims that no adverse consequences attach to its tardiness, and the entire tax claim is entitled to first-tier status. See In re Vecchio, 20 F.3d at 560; Cardinal Mine Supply, 916 F.2d at 1091.
This argument requires us to ignore that third-tier status is expressly conferred upon “any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection.” 11 U.S.C. § 726(a)(3) (emphasis added). In re *1311 Vecchio described the categorization of late-filed priority claims among other tardily filed “allowed unsecured claims” as leading to an “absurd result.” 20 F.3d at 558. We disagree. First, priority unsecured claims are a species of allowed unsecured claims and are facially within § 726(a)(3). Section 507, which defines claims entitled to priority, also repeatedly refers to these as “allowed unsecured claims” of various types. See 11 U.S.C. § 507(a)(3), (4), (5) and (6). Priority tax claims are defined as “allowed unsecured claims of governmental units_” 11 U.S.C. § 507(a)(7). There is nothing anomalous about providing timely-filed priority claims first-tier distribution status, while relegating the untimely claims to third-tier among other untimely filed “allowed unsecured” claims.
Second, contrary to Vecchio, it is not illogical that late-filed priority claims may receive distribution after certain tardy general unsecured claims. Only a tiny class of non-priority creditors receives that benefit: those who failed to receive timely notice of the bankruptcy and who then filed in time to permit payment on their claims. Moreover, priority claimants will almost always be on notice of the pendency of a case and thus empowered to protect their rights.[9]
Third, Vecchio errs in suggesting that the dichotomy between subsections 726(a)(3) and (a)(4) will permit late-filed fines and penalties to receive distributions ahead of timely filed claims for punitive relief based on (a)(4). Consistent with bankruptcy practice, any claim can be split into its component parts— priority, secured, unsecured, penalties, etc.— and may receive distribution based on the resulting spectrum.
Finally, the decision in Vecchio, disallowing any effective bar date for priority claims, conflicts with § 501(c), which permits a debt- or to file a proof of claim whenever a creditor does not timely file its own claim. This provision was intended to allow debtors to complete the list of claims against the estate in a timely fashion and to ascertain the basis for and amounts of creditors’ distributions. The particular object of this salutary provision was untimely priority claims, because of their potentially heavy impact on a case. Vecchio’s analysis overlooked § 501(c) and in so doing unwittingly emasculated it. Our result reinforces the provision.
Any court that interprets questions under the Bankruptcy Code must do so with humility — the Code’s provisions are not always clear, and they are often overlaid with ancient non-statutory bankruptcy lore that is difficult to dislodge. The reasonable disagreements among the circuit and bankruptcy courts in this case exemplify the problem. We conclude, at variance with some of our brethren, that for obvious reasons going to the heart of the efficiency and fairness of the bankruptcy system, the Code attaches consequences to failure to comply with proof of claim deadlines. Further, the Code contemplates no distinction between late-filed priority and other late-filed allowed unsecured claims, both of which may recover, if at all, only under § 726(a)(3) or its Chapter 11 or 13 equivalents.
Applying the Code and Rules to the case sub judice, we hold that the IRS’s tardily filed claim is not entitled to first tier status as IRS hoped. The claim might be entitled to a distribution under § 726(a)(3) along with any other untimely allowed secured claims, but the availability of such relief has not been argued before us and is waived. Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir.1994).
The IRS alternatively contended in the lower courts that the bankruptcy court abused its discretion by not allowing the amended claim to “relate back” to the date of the original filing. The leading Fifth Circuit case on allowance of amendments to proofs of claim is In re Kolstad, 928 F.2d 171 (5th Cir.) cert. denied 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). In Kolstad, we explained that “[ajmendments to timely creditor proofs of claim have been liberally permitted to ‘cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theo *1312 ry of recovery on the facts set forth in the original claim.’” Id. at 175 (quoting In re Int’l Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir.1985)). However, “courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability.” Kolstad, 928 F.2d at 175.
The bankruptcy court and the district court both concluded that the amended proof of claim set forth new grounds of liability. The IRS candidly admitted as much at oral argument. We find no error, much less any abuse of discretion in the court’s refusal to allow the amended claim to relate back to the filing of the initial proof of claim.
III.
CONCLUSION
The IRS’s tardily filed claim is “allowed” under 11 U.S.C. § 502, but it is not entitled to first-tier status under 11 U.S.C. § 726(a)(1). Further, the lower courts did not abuse their discretion in refusing to allow the amended tardily filed claim to relate back to the filing date of the original claim. REVERSED in part, AFFIRMED in part.

. See 11 U.S.C. § 502(b)(9) (Supp.1995).

. Of the claim for 1990 taxes, $20,059.25 was a priority unsecured claim, and $737.27 was a general unsecured claim.

. The claim for 1990 was ultimately reduced to $142.22 in interest after the IRS received and processed the debtors’ 1990 tax return and payment.

.The court also noted that Bankruptcy Rules 3002(c) and 9006(b)(3) provided for an extension of the bar date upon proper motion. However, no such motion was filed by the IRS.

. Section 2075 provides in pertinent part:
The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.
Such rules shall not abridge, enlarge, or modify any substantive right.
The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule. The rule shall take effect no earlier than December 1 of the year in which it is transmitted to Congress unless otherwise provided by law.
11 U.S.C. § 2075.

. The Sixth Circuit recently reached a contrary conclusion in In re Chavis, 47 F.3d 818 (6th Cir.1995). The Chavis court held that tardily filed claims were not allowed claims under sections 501 and 502. Id. 823-24. However, as explained above, this reading renders portions of section 726 superfluous.
The Chavis court also drew a distinction between chapter 7 and chapter 13 cases. Id. at 824. Although we agree that there are "fundamental differences” between the two fypes of cases, the provisions of chapter 5 apply equally to both. See 11 U.S.C. § 103(a). Our interpretation of the Code obviates the need to draw an extra-textual distinction.

. Chapters 1,3, and 5 of the Code apply to cases under Chapters 7, 11, 12, and 13. 11 U.S.C. § 103(a). Although Chapter 7 does not explicitly apply to Chapter 13 cases, certain provisions in Chapter 13 incorporate portions of Chapter 7. Section 1325 requires that a creditor receive an amount "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title ...” Id. at § 1325(a)(4). See also 11 U.S.C. § 1129(a)(7)(A), as explained Collier on Bankruptcy (15th ed.) ¶ 1129.02, at 1129-32, by quoting legislative history that cross-references this provision to §§ 726(a)(3) and 726(a)(4).

. The portion of the IRS's claim relating to penalties for failing to file a tax return are given fourth level distribution status under section 726(a)(4).

. Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech), 863 F.2d 393, 398 (5th Cir.), cert. denied, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989) ("Frequent players in the bankruptcy arena ... are aware that deadlines are important and should not be heard to complain of unfairness except under the most egregious circumstances.”).