**In re David R. BLOEBAUM, and Emma L. Bloebaum, Debtors.**

**No. 00–13154–FM.**

United States Bankruptcy Court, W.D. Texas, Austin Division.

June 9, 2004.

Elizabeth June Hickson, Austin, TX, for Debtors.

Hilary B. Bonial, Max A. Wernick, Dallas, TX, Eric J. Slifer, Carol Stream, IL, for Creditors.

*MEMORANDUM OPINION RECON-
SIDERING RULING OF FEB-
RUARY 17, 2004*

FRANK R. MONROE, Bankruptcy Judge.

The matter before the Court is the Chapter 13 Trustee's Motion to Reconsider filed on March 12, 2004. The Court has reconsidered whether 11 U.S.C. § 726(a)(3) applies in a case filed under Chapter 13 of Title 11 because of the plain meaning of 11 U.S.C. § 502(b)(9). For the reasons stated below, the Court holds that § 726(a)(3) does not apply in a case filed under Chapter 13.

## I. Factual Background

David and Emma Bloebaum filed for bankruptcy under Title 11 of the United States Code ("Code") under Chapter 13 on November 3, 2000. An Order Confirming the Plan was entered on July 23, 2001. The deadline for filing Proofs of Claim expired on March 13, 2001.

Chase Manhattan Bank had an unpaid unsecured deficiency after the Bloebaums' surrendered their car through the Chapter 13 Plan. Chase Manhattan Bank did not file a Proof of Claim until April 23, 2002, over a year after the deadline for filing proofs of claim.

The Trustee filed an objection on October 3, 2003 to Chase Manhattan Bank filing a Proof of Claim. The Court held a hearing on February 17, 2004 and made findings of fact and conclusions of law on the record based on the Trustee's arguments and briefs.[1] The Court issued an order denying the Trustee's objection on March 10, 2004.

## II. Discussion

The Chapter 13 Trustee filed a motion requesting that this Court reconsider

whether an unsecured creditor that has actual knowledge or notice of a Chapter 13 who files its proof of claim tardily ("tardy creditor") may receive payment under § 726(a)(3). Some tardy creditors have filed proofs of claim under an interpretation of § 502(b)(9) that expands the application of § 726(a)(3) to other chapters of the Code, including Chapter 13.

▆▆▆ The United States Supreme Court has held that courts are not the legislatures and, therefore, the proper role for the courts should be to interpret statutes by their plain meaning. *See e.g., Lamie v. U.S. Tr.,* 540 U.S. 526, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004) (Maintaining this proper role even when faced with a possible drafting error in the Code.). The Court held in a recent case interpreting the Code that "the starting point in discerning congressional intent is the existing statutory text." *Lamie,* 540 U.S. at ——, 124 S.Ct. at 1030. The Court further held that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). Accordingly, this Court will first examine the plain meaning of § 502(b)(9) and then support its interpretation with the legislative intent and case law to reject the argument that Congress placed a Chapter 7 provision into Chapter 5 to have it apply to the other chapters of the Code.

### A) Plain Meaning

The Court will first examine the plain meaning of the phrase "except to the extent" in § 502(b)(9). Since the Bankrupt-

---

1. Chase Manhattan Bank did not submit any briefs or attend any hearings.

cy Reform Act of 1994, that section has provided, in pertinent part, that after an objection, a claim shall be allowed except to the extent that the "proof of such claim is not timely filed, *except to the extent* tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 502(b)(9) (emphasis added).[2] If "except to the extent" means that § 726(a)(3) applies in a Chapter 13, then a tardy creditor would only have his payment priority subordinated to those who timely filed claims. If it does not apply, the Trustee could object to and have the tardy creditor's claim disallowed.

Congress has not defined "except to the extent" in the Code, but two interpretations exist. Tardy creditors would have this Court hold that "except to the extent" has an active meaning. This interpretation results in § 726(a) applying anytime the main section, § 502(b)(9), applied. Because § 502(b)(9) applies in a Chapter 13 case under § 103(a), then § 726(a) would also have to apply in a Chapter 13 case.

Alternatively, "except to the extent" could have a passive meaning. This would mean that § 726(a)(3) would not apply unless independently applicable. Under the passive reading, a court would ignore the exception unless the cited to section would have applied anyway. Here, however, § 726 independently applies only in a Chapter 7 case.

A passive interpretation does not render the exception a surplusage. The "except to the extent" language should be interpreted as Congress intended by ensuring that certain sections maintain their priority over others by using the passive inter-

pretation. Here, the "excepted to the extent" language merely ensures that § 502(b)(9) cannot be interpreted as either expanding or limiting § 726(a). Between these two interpretations, the Court holds that the passive interpretation is the plain meaning of § 502(b)(9) for the following three reasons.

First, the passive interpretation allows all of the parts of § 502(b)(9) to have meaning. The § 726 exception would only apply in a Chapter 7 case. In a Chapter 13 case, the claim would be disallowed as tardy under the main part of § 502(b)(9). Thus, every word of § 502(b)(9) would have meaning and be applicable when appropriate.

An active interpretation, in contrast, would make the language preceding the § 726(a) exception in § 502(b)(9) useless. The main part of § 502(b)(9), the disallowance of any tardily filed claims, would never be used because § 726 would apply to the other chapters, which would give all tardily-filed claims, regardless of the chapter, just a lowered priority. Additionally, the requirements of an objection and notice and a hearing, which allow the courts to monitor which claims are disallowed, would become useless under the active interpretation. A party in interest would never have to object because § 726(a) does not require an objection. Active interpretation, when compared to passive interpretation, is inadequate because it does not use the main part of § 502(b)(9).

Second, the Court can look beyond § 502(b)(9)'s text to the congressionally-approved tools for divining a section's plain meaning: the General Provisions of the Code. Specifically, § 103 guides courts in

---

**2.** Section 726 determines the priority of distribution within a Chapter 7 case. The relevant paragraph of § 726 in this case is (a)(3), which provides for third-class priority "in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this title [allowing timely and tardily filed but without notice claims]." 11 U.S.C. § 726(a)(3).

determining which provisions apply to which chapters. It provides, in pertinent part, that "(a) ... chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title. (b) Subchapters I and II of chapter 7 of this title apply only in a case under such chapter." Section § 726 falls under Subchapter II of Chapter 7.

The passive interpretation would satisfy § 103 because § 726(a)(3) would only apply in a Chapter 7 case. Accordingly, Chapters 1, 3, and 5 would apply in full to all chapters because § 502(b)(9) would always apply. Thus, § 103(a) would be satisfied. Additionally, § 502(b)(9) would not expand § 726(a)'s effect to cases in chapters other than Chapter 7 because § 726(a) would only be used when independently applicable. Thus, § 103(b) would also be satisfied.

An active interpretation would leave at least one subsection of § 103 unsatisfied. All Chapter 5 provisions would have to apply to Chapter 13 under § 103(a). Therefore, § 726(a) would crossover and apply to a Chapter 13 case, which would conflict with § 103(b).[3] Alternatively, if the Court decides not to apply § 502(b)(9) under Chapter 13 to satisfy § 103(b) this would leave § 103(a) unsatisfied as well as having no solution for handling tardy creditors in a Chapter 13 case.

A tardy creditor could argue that § 103(a) is a general provision and general statutory rules usually do not govern if a specific rule applies. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 525, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). This

potential argument provides that general provisions would be ignored when an interpretation of a section that conflicted with them was proffered to a court. This argument is unsatisfactory because § 103(b) does not always conflict with § 502(b)(9) but only when a court adopts the active interpretation. If the conflicting interpretation always overrode the General Provisions, then the Provisions would be useless because they could not help courts choose between conflicting interpretations, like the passive and active interpretations here. The goal of the General Provisions is not to unravel the statute but to limit the number of possible interpretations.

Third, the Court can use a tool other than § 502(b)(9)'s text and the General Provisions to determine the plain meaning. It can examine the "except to the extent" language in other sections in the Code to determine if one definition is more consistent throughout the Code. That language is used fifteen times in the Code, excluding § 502.[4] Most sections do not cite to other sections of the Code but, instead, require party consent, judicial order, or another applicable law to apply. But § 542(b) and § 548(c)'s "except to the extent" language cite to other sections within the Code, even if, unlike § 502(b)(9), they only cite to sections within their own chapters.

The sections that use the "except to the extent" language only make sense in a passive interpretation. Section 542(b) provides for turnover of debts owed to the debtor to the Trustee "except to the extent that such debt may be offset under section 553 of this title." Under a passive interpretation, the turned over debts are de-

---

3. The Fifth Circuit held that "the provisions of chapter 5 apply equally to both [chapters 7 and 13] ... Our interpretation of the Code obviates the need to draw an extra-textual distinction." *In re Waindel*, 65 F.3d 1307, 1309 FN 6 (see below). However, § 502(b)(9) applies equally to cases in all chapters if read

with the passive interpretation. Additionally, this reasoning applied to the pre–1994 Amendment Code.

4. 11 U.S.C. §§ 303, 346, 522, 541, 542, 547, 548, 552, 553, 723, 726, 764, 943, 1106, 1129.

creased by an offset only if an offset under § 553 already applied. This interpretation makes sense.

The active interpretation turns the Code's language into nonsensical mush. In § 542(b) an offset would be required even when no offset existed. This Court would have to require this offset because the cited to section, § 553, would always be applied when the main section applied.

This nonsensical active interpretation is the same interpretation that tardy creditors request for § 502(b)(9). In § 502(b)(9), to have the tardy creditor's claim drop in payment priority and not be disallowed in a Chapter 13 case, the cited to section, § 726(a), would have to apply even when not independently applicable. This interpretation would be no different than requiring an offset under § 542(b) when § 553 did not independently apply.

Tardy creditors have been misled into using an active interpretation under § 502(b)(9) but not under other sections because those other sections' main parts cover different facts from the cited to sections. Section 542 discusses the turnover while the cited to section, § 553, covers avoiding an offset. In contrast, § 502(b)(9) and § 726(a)(3) both cover tardy creditors. This factual similarity creates the appearance that § 502(b)(9) and § 726(a)(3) are interchangeable. However, the active interpretation creates nonsense once this factual similarity is removed. Accordingly, to preserve consistency in interpreting the phrase "except to the extent" throughout the Code, this Court will adopt the passive interpretation.

Because the passive interpretation of "except to the extent" keeps within the phrase's meaning within the Code consistent, comports with § 103, and allows the main part of the section to be used, the

Court adopts it as the plain meaning of § 502(b)(9).

## B) But Why Place a Chapter 7 Provision into Chapter 5?

Although the plain meaning is plain and the passive interpretation should be adopted, tardy creditors can make another argument to persuade the Court to adopt the active interpretation. They could argue that Congress placed a Chapter 7 provision into Chapter 5 to expand § 726(a)(1)-(3) to the other Code chapters. However, commentators have disagreed with this interpretation. According to Keith Lundin, "Section 726(a) is only applicable in Chapter 7 cases ... [t]he cross-reference to § 726 in § 502(b)(9) should not be misinterpreted in Chapter 13 cases to create an additional exception to the timeliness requirements." Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Ed.*, 290–2 (Bankruptcy Press, Inc.2000); *see 6 Colliers on Bankruptcy,* ¶ 726.02[3], at 726–10 (15th ed. 2004) ("[S]ection 726 has no applicability in other chapters.").

The commentator's reasoning matches Congress' stated intent in amending § 502(b). The Congressional Record states that: "[t]he amendment to section 502(b) is designed to overrule *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn.1992), and its progeny by disallowing claims that are not timely filed." 140 Cong. Rec. H10,752, H10,768 (1994) (Congressman Brooks).

*In re Hausladen,* a Chapter 13 case, held that § 726 was not "directly applicable" but used that section to illustrate that "while treatment of a claim [i.e. priority of payment] may be dependent on its timeliness, allowance is not." 146 B.R. 557, 560 (Bankr.D.Minn.1992). Congress' intent in passing § 502(b)(9) was to disallow tardy creditors in cases filed in chapters other than Chapter 7. Congress inserted the

§ 726 exception to ensure that the older priority structure in Chapter 7 was not overridden or limited. While the passive interpretation effectuated this intent, using the active interpretation of § 502(b)(9) would undermine it by not disallowing any tardy creditors.

Yet the Fifth Circuit in *In re Waindel,* 65 F.3d at 1307, undoes Congress' intent to disallow the tardy creditor's claim. In *Waindel,* the Fifth Circuit reversed, in part, the district and bankruptcy court's disallowance of tardily filed priority claims in a Chapter 13 after the creditor, the Internal Revenue Service, appealed. *Waindel,* 65 F.3d at 1308–09. The Fifth Circuit held that the IRS' claim would be allowed but that it was not entitled to first-priority status under § 726(a)(1). *Id.* at 1312.

Courts have tried to circumvent the Fifth Circuit in *Waindel* because it ruled on a now obsolete law. *See In re Miranda,* 269 B.R. 737, 743–744 (Bankr. S.D.Tex.2001) (Attempting to distinguish but eventually holding that *"Waindel* is instructive" without reaching the consequences of late filing.). The debtors in *Waindel* filed their case before the 1994 Amendments were enacted, and the Fifth Circuit applied the same statute as the bankruptcy court in *Hausladen. Waindel,* 65 F.3d at 1309. Thus, a court might consider *Waindel* an overruled progeny of *Hausladen.* Yet it seems unlikely that the Fifth Circuit would limit its holdings to a dated statute. Additionally, the argument that the IRS' priority status as a creditor creates a distinguishing factor from other unsecured tardy creditors is illusory because § 726(a)(3) applies to "any allowed unsecured claim." *But see Miranda,* 269 B.R. at 743 (Distinguishing priority tax claims from general unsecured claims.).

Assuming *Waindel* is still controlling law, the Fifth Circuit did not hold that § 726(a)(3) applied to Chapter 13. The court only held that "[t]he claim *might* be entitled to a distribution under § 726(a)(3) ... but the availability of such relief has not been argued before us and is waived." *Id.* (emphasis added). The Fifth Circuit did not address the waived point, and there is no controlling case law within the Western District of Texas on that point. Additionally, in referring to tardy creditors, the Fifth Circuit held that "the Code attaches consequences to failure to comply with proof of claim deadlines ... [tardy creditors] may recover, if at all, only under § 726(a)(3) or its Chapter 11 or 13 equivalents." *Id.* The court's distinction between § 726 and those equivalents means that the court did not intend § 726(a)(3) to apply to those other chapters. While the *Waindel* court did not explain what these equivalents were, the disallowance of a claim under § 502(b)(9) as a denial of all recovery for a tardy creditor in a Chapter 13 is consistent with this holding.

Therefore, the passive interpretation is consistent with both the Fifth Circuit in *Waindel,* as far as that case applies after the Bankruptcy Reform Act of 1994, and Congress' intent in overruling *Hausladen* and its progeny. Additionally, the passive interpretation invokes the plain meaning for the "except to the extent" language of § 726(a)(3), namely that it applies when independently applicable. Accordingly, this Court will only apply § 726(a)(3) in a Chapter 7 case.

## III. Conclusion

The Court has reconsidered the Trustee's motion. Chase Manhattan Bank filed its claim later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code and, thus, is not timely. Fed. R. Bankr.P. 3002(c). The claim is disallowed pursuant to § 502(b)(9). An order consistent with this

memorandum opinion will be drafted accordingly.