**In re PROFCO, INC., Debtor.**

No. 95–43943.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 8, 2005.

Alan Sanford Gerger, Dunn Arnold, Robert Smith Blanc, Gardere Wynne Sewell & Riggs, Houston, TX, for Debtor.

**MEMORANDUM OPINION ON THE UNITED STATES OF AMERICA'S MOTION TO ALLOW UNTIMELY PROOF OF CLAIM FOR LACK OF NOTICE (DOCKET NO. 837)**

JEFF BOHM, Bankruptcy Judge.

The United States of America, through its agent, the Internal Revenue Service (IRS), filed a Motion to Allow Untimely Proof of Claim for Lack of Notice (the Motion) in the above-styled chapter 7 case. The chapter 7 Trustee (the Trustee) and Baker Hughes Oilfield Operations, Inc. (Baker) filed pleadings opposing the Motion. This Court believes the positions of the Trustee and Baker are meritorious with respect to the issue of timeliness, and therefore holds that the IRS's proof of claim was untimely filed. However, despite this holding, this Court also holds that the portion of the IRS's late-filed proof of claim which constitutes a priority claim must be paid in full before the Trustee makes any distribution to Baker for application against its allowed unsecured claim. This memorandum explains how this Court arrived at these holdings.

## I. FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The hearing on the Motion was held on February 9, 2005 and none of the parties called any witnesses to establish any facts. Rather, the relevant facts were established by reference to the record in this case and by assertions made by counsel of record in pleadings and at the hearing, which constitute judicial admissions.

The relevant facts, in chronological order, are as follows:

(1) On May 30, 1995, Profco, Inc. (Debtor) filed a voluntary chapter 11 Petition;

(2) On June 6, 1995, the IRS's automatic insolvency system reflected that the IRS was aware of the chapter 11 case;

(3) On June 7, 1995, the Order for Relief was entered, and this Order set forth that the proof of claim deadline

was October 3, 1995[1] and that the first date set for the meeting of creditors was July 5, 1995;

(4) The Debtor scheduled the IRS as a creditor on its Schedules, which were filed on June 30, 1995;

(5) On July 5, 1995, the Debtor's chapter 11 case was converted to a chapter 7 case;

(6) After the case was converted to a chapter 7, the Trustee discovered that the estate had assets, and therefore, on May 16, 1996, a Notice of Assets was sent out to all creditors setting forth that the Trustee had discovered assets and that the deadline for governmental entities to file their proofs of claim was November 12, 1996. It is unclear whether the IRS received this Notice of Assets;

(7) The IRS failed to file a proof of claim by the initial deadline of October 3, 1995, and also by the deadline of November 12, 1996 set forth in the Trustee's Notice of Assets;

(8) The IRS did not file its proof of claim until January 10, 2003—which was 7 1/4 years after the initial bar date of October 3, 1995 and 6 1/6 years after the bar date of November 12, 1996 in the Trustee's Notice of Assets;

(9) The IRS' proof of claim (the Claim) sets forth that the IRS has an unsecured priority claim of $132,833.08 and a general unsecured claim of $59,447.60;

(10) The IRS did not file the Motion until December 17, 2004—which was approximately 9 1/4 years after the initial bar date, almost 8 years after the bar date in the Trustee's Notice of Assets, and almost 2 years after the filing of the Claim;

(11) The Trustee presently holds approximately $600,000 for distribution to creditors. Baker holds a general unsecured claim of $3,165,092.77 and the total amount of all general unsecured claims is $6,214,134.95.

(12) The Trustee has made some payments to administrative claimants, and he also paid certain wage claims and taxes. The Trustee has not yet filed a final Report, and no order approving such a report has been signed and entered on the docket.

(13) A hearing on the Motion was held on February 9, 2005 at 1:30 p.m. Alan Gerger appeared for the trustee, David Whitcomb appeared for the IRS, and Patrick Devine appeared for Baker. The Court considered the Motion, responses and objections thereto, heard the arguments of parties, and took the matter under advisement.

## II.  DISCUSSION

The Motion requests that this Court allow the Claim as timely filed. The Trustee's response does not expressly state the basis for the Trustee's objection; it simply requests that the Court deny the Motion.[2]

---

1. The initial order for relief stated that the deadline to file a proof of claim was October 3, 1995. This date is exactly 90 days following July 5, 1995, which is the first date set for the meeting of creditors. The order for relief does not provide for a different claims bar date for governmental entities. Accordingly, it appears that the deadline of October 3, 1995 applied to both non-governmental creditors as well as governmental creditors.

2. At the hearing, the Trustee's oral argument was primarily based on the need to reward those who timely file claims, and penalize those who do not, so that a firmly established objective of the bankruptcy process, particu-

Baker's objection expressly requests disallowance of the Claim in the penultimate paragraph of Baker's pleading, and then the prayer paragraph requests the Court to deny the Motion. In sum, the issues raised and the relief sought in these pleadings can be boiled down to one question: Should the Claim, in whole or in part, be barred from payment? In answering this question, this Court will consider three issues: (1) the timeliness of the Claim; (2) the allowance of the Claim; and (3) the relative priority of the Claim.

## A. The Timeliness of the Claim

Rule 3003(c)(3), which governs the time for filing proofs of claim in chapter 9 and chapter 11 cases, sets forth that: "The court shall fix ... the time within which proofs of claim or interest may be filed." FED. R. BANKR. P. 3003(c)(3) (2004). In the case at bar, which was initially filed as a chapter 11 case, this Court set the bar date for October 3, 1995.[3] Although the IRS had actual knowledge of this case by no later than June 6, 1995, the IRS failed to file a proof of claim by the October 3, 1995 deadline. Accordingly, the Claim is untimely filed unless, as Rule 3003(c)(3) notes, the IRS can show that conditions existed as described in Rule 3002(c)(2), (c)(3), or (c)(4). *Id.* Unfortunately for the IRS, none of these conditions are present in this case; therefore, assuming that Rule 3003(c)(3) applies in this case,[4] the Claim is untimely filed. *In re 50–Off Stores, Inc.,* 220 B.R. 897, 900 (Bankr.W.D.Tex.1998); *In re Lee Way Holding Co.,* 178 B.R. 976, 984—986 (Bankr.S.D.Ohio 1995); *In re Honeycutt Grain Co., Inc.,* 41 B.R. 678, 681 (Bankr.W.D.La.1984).

If Rule 3003(c)(3) is inapplicable because the case was converted from a chapter 11 to a chapter 7 before the bar date of October 3, 1995 expired, then Rule 3002(c) must apply. This Rule governs the time for filing proofs of claim in chapter 7 cases.

Rule 3002(c) sets forth that "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors." FED. R. BANKR. P. 3002(c) (2004). However, Rule 3002(c)(1) is a provision expressly carved out for governmental entities of which the IRS is assuredly one. Rule 3002(c)(1) states that: "A proof of claim filed by a governmental unit is timely filed if it is filed not later than 180 days after the date of the order for relief." FED. R. BANKR. P. 3002(c)(1) (2004). Thus, governmental entities are given more time than non-governmental claimants to file their proof of claim. The date of the order for relief in this case was May 30, 1995. The Claim was not filed by November 26, 1995 (*i.e.,* 180 days after May 30, 1995); therefore, the Claim was untimely filed.

Even if the date of the order for relief is not the date of the filing of the chapter 11 petition, but rather the date of the conversion of the case under 11 U.S.C. § 348(b)—which was July 5, 1995—the Claim was still untimely filed. 180 days following July 5, 1995, is January 1, 1996, and the Claim was not filed until January 10, 2003. There is no doubt that the Claim was tardily filed under any scenario.

Rule 3002(c)(1) does provide that the bar date for a governmental entity may be extended "for cause shown" so long as the governmental entity files a motion before

---

larly in chapter 7 cases, is achieved; namely, the need for finality in the administration of claims.

**3.** *See supra* note 1.

**4.** This case was converted to a chapter 7 on July 5, 1995, and Rule 3003 only applies to filing proofs of claims in chapter 9 and chapter 11 cases.

the expiration of the 180 day period for filing the proof of claim. In the case at bar, the IRS filed the Motion on December 17, 2004. Regardless of whether the 180 day period expired on November 26, 1995 or January 1, 1996, the Motion did not come within hailing distance of being timely filed. Accordingly, even if the IRS could show cause—which it cannot given that it had actual notice of the bankruptcy filing as early as June 6, 1995—the Motion itself was still not filed within the 180 day period; therefore, the IRS may not avail itself of the provision in Rule 3002(c)(1) allowing for an extension of time to file its proof of claim.

Rule 3002(c)(5) is also worth reviewing because this provision provides yet another avenue for a claimant to file a claim. This rule sets forth that: "If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice." FED. R. BANKR. P. 3002(c)(5) (2004).

This Court has reviewed the docket sheet in the case at bar, and it is unclear whether a Notice of Insufficient Assets was ever sent. However, it is clear that the Clerk's office sent a Notice of Assets on May 16, 1996 (Docket No. 310), which arguably triggers Rule 3002(c)(5) even if no Notice of Insufficient Assets was ever initially sent. The Notice of Assets set forth that the Trustee had discovered assets, that non-governmental entities had until September 19, 1996 to file their proofs of claim, and that governmental entities had until November 12, 1996 to file their claims.

It is unclear whether the IRS received this Notice of Assets. If it did,

then it certainly had notice of the bar date of November 12, 1996, and the IRS failed to file the Claim by this deadline. If the IRS did not receive this Notice, the IRS nevertheless knew about the existence of the chapter 11 case as early as June 6, 1995, and the IRS therefore had a duty to investigate and check the docket sheet to determine when the bar date was for filing proofs of claims. *Robbins v. Amoco Prod. Co.*, 952 F.2d 901, 908 (5th Cir.1992) ("When the holder of a large, unsecured claim receives any notice that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril.") (internal citations omitted); *Grossie v. Sam*, 894 F.2d 778, 779–82 (5th Cir.1990) (holding that a creditor was bound by the terms of the debtor's reorganization plan where the creditor had general notice of the debtor's bankruptcy but did not receive notice of the claims bar date); *In re TLI, Inc.*, 1998 WL 684242, at *4–5 (N.D.Tex. Sept. 25, 1998) (holding that if a creditor receives actual notice of the debtor's bankruptcy, due process is satisfied and the creditor is bound by the terms of any plan of reorganization confirmed by the bankruptcy court). This, the IRS did not do; and its lack of diligence should not now be rewarded by allowing the IRS to invoke Rule 3002(c)(5) and contend that it did not receive notice of the November 12, 1996 deadline. *See generally In re TLI, Inc.*, 1998 WL 684242, at *5.

All in all, under either Rule 3002 or Rule 3003, the Claim is tardily filed. Once a claim is untimely filed, this Court cannot grant a retroactive extension of the time to file. *In re Rago*, 149 B.R. 882, 884 (Bankr.N.D.Ill.1992). Indeed, Bankruptcy Rule 9006(b)(3) expressly prohibits this Court from enlarging the time limits of

Rule 3002(c). Even if this Court had the discretion to do so, it would not under the facts of this case. The IRS had actual knowledge about this case since June 6, 1995, and yet did nothing for several years. The IRS was not only excessively late in filing the Claim; it was excessively late in filing the Motion. Such conduct, whether negligent or deliberate, merits no assistance from any discretionary powers that this Court might have.

For all of these reasons, the Claim is untimely filed, and this Court denies the Motion to the extent that it requests an order stating that this Claim is deemed to be timely filed.

**B. Allowance of the Claim**

■ The fact that the Claim was untimely filed does *not* resolve the question of whether the entire Claim is barred from payment by the estate. *Rago,* 149 B.R. at 885. Those cases that so hold or suggest otherwise are incorrect. *In re Waindel,* 65 F.3d 1307, 1309 n. 6 (5th Cir.1995) (agreeing with other circuit courts that have held that "to the extent that Rule 3002(a) declares every untimely filed claim to be disallowed, the Rule impermissibly conflicts with the Code" and thus Rule 3002(a) "must be viewed as providing a dividing line between timely and tardy claims, rather than a flat ban on the allowance of late-filed claims") (internal citations omitted).

Disallowance of a claim is governed by § 502, which provides that a claim is deemed allowed unless an objection is made. 11 U.S.C. § 502(a) (2004). § 502(b) sets forth that if an objection is lodged, the court shall allow the claim unless it fits into any one of eight specific categories. 11 U.S.C. § 502(b) (2004). *None of these categories includes the untimely filing of a claim.* The plain meaning of this statute—which this Court is required to dis-

cern under *U.S. v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)—is therefore that a claim (including the Claim in this case), even though untimely filed, is an allowed claim entitled to be paid.

Support for this interpretation comes from other relevant sections of the Bankruptcy Code. § 726(a)(1) makes express provision for payment of a claim "which is timely filed under section 501 of this title *or tardily filed before the date on which the trustee commences distribution under [section 726]."* 11 U.S.C. § 726(a)(1) (2004) (emphasis added). Further, § 726(a)(3) makes specific provision for payment of an "allowed unsecured claim *proof of which is tardily filed."* 11 U.S.C. § 726(a)(3) (emphasis added). This statutory language leaves no doubt that the untimely filing of a claim does not constitute grounds for disallowance of that claim.

■ This Court is mindful that Rule 3002(c)(1), which governs the deadline for filing governmental claims in chapter 7 cases, states that: "A proof of claim filed by a governmental unit is timely filed if it is filed not later than 180 days after the date of the order for relief." FED. R. BANKR. P. 3002(c)(1) (2004). This Court is also mindful that Rule 3002(a), entitled "NECESSITY FOR FILING," sets forth that: "An unsecured creditor ... *must* file a proof of claim ... for the claim ... to be allowed." FED. R. BANKR. P. 3002(a)(1) (2004) (emphasis added). These two bankruptcy rules, when read together, seem to require disallowance of a late filed claim, such as the Claim of the IRS. However, such a construction conflicts with the plain meaning of § 502 and § 726. Where a statute and a rule conflict, the statute governs. *Waindel,* 65 F.3d at 1309. Therefore, neither the Trustee nor Baker may rely upon Rules 3002(a) and (c)(1) to obtain disallowance of the Claim. *Id.* The Claim

is therefore an allowed claim under the facts in this case.

## C. Priority of the Claim

Because the Claim is an allowed claim, it is necessary to determine the priority of the Claim so that the Trustee will know how to distribute the monies that he holds from liquidating the estate's assets. The Claim sets forth that the IRS holds a priority claim of $132,833.08 and a general unsecured claim of $59,497.60. The section governing the priority of distribution is § 726(a), which delineates the tiers of distributees who receive payments from the chapter 7 trustee. 11 U.S.C. § 726(a) (2004). § 726(a)(1) describes the first tier of claimants to whom property of the estate shall be distributed, as follows:

> first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed *before the date on which the trustee commences distribution under this section.*

11 U.S.C. § 726(a)(1) (2004) (emphasis added).

■ There is no question that the priority claim of $132,833.08 constitutes a claim "of the kind specified in ... section 507 of this title." *Id.* There is also no question that this priority claim was tardily filed. Hence, whether this priority claim falls within the § 726(a)(1) category of first tier distributees turns on whether the Claim was filed "before the date on which the trustee commences distribution under this section." *Id.*

■ The Trustee has made interim distributions in this case. He has paid certain administrative claims and certain wage claim taxes. At first blush, therefore, it appears that the Claim might have been filed after the commencement of dis-

tributions by the Trustee and therefore not fall within the § 726(a)(1) category. However, such a conclusion would be wrong. The Fifth Circuit, in interpreting the phrase "the date on which the trustee commences distribution" under § 726(a)(1), held that:

> the appropriate interpretation of "commences distribution," under the totality of the present bankruptcy law, *is the date when a bankruptcy court approves the trustee's final report,* thus allowing the trustee to commence final distribution of the estate.

*Matter of Van Gerpen,* 267 F.3d 453, 457 (5th Cir.2001) (emphasis added).

In the case at bar, this Court has not approved the Trustee's final report because no such report has yet been filed. Hence, the Claim was filed before "the date on which the trustee commences distribution." Accordingly, the priority claim of $132,833.08 falls within § 706(a)(1) and must be paid in full before distribution is made to the remaining categories of claimants.

■ The IRS's allowed unsecured claim of $59,447.60 does not come within § 726(a)(1) because it is not a claim "of the kind specified in ... section 507." 11 U.S.C. § 726(a)(1) (2004). Therefore, it falls within either the second tier status created by § 726(a)(2) or the third tier status created by § 726(a)(3). § 726(a)(2) includes allowed unsecured claims that are: (a) timely filed; or (b) tardily filed so long as the claimant "did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a)." 11 U.S.C. § 726(a)(2)(C)(i) (2004). In the case at bar, the IRS did have actual knowledge of the case well in advance of the deadline for filing proofs of claims. Indeed, the IRS had notice of the case as early as June 6, 1995—when the case was still a chapter 11. Because the

IRS had this actual knowledge, the general unsecured portion of the Claim does not come within the second tier of distribution.

By process of elimination, the IRS's allowed unsecured claim of $59,447.60 falls within the third tier created by § 726(a)(3). This section includes "any allowed unsecured claim proof of which is tardily filed under section 501(a)"—which is exactly the circumstance in this case. 11 U.S.C. § 726(a)(3) (2004).

### III. CONCLUSION

Applying § 726 to this case, the Trustee must first pay the IRS its priority claim of $132,833.08. Second, the Trustee must pay the allowed unsecured claims that were timely filed (such as the $3,165,192.77 claim held by Baker) or tardily filed due to lack of notice or actual knowledge. Third, he must pay the allowed unsecured claims that are tardily filed where the claimant had knowledge of the case before the bar date had passed (such as the IRS's general unsecured claim of $59,447.60). Given the fact that the Trustee holds approximately $600,000 for distribution to all claimants, as a practical matter, there will probably be sufficient funds to pay the entire priority claim of the IRS, a portion of Baker's claim, and none of the IRS's allowed unsecured claim.

This result may seem strange and unfair to Baker and the Trustee. By requiring payment of all priority claims first, regardless of their timeliness, § 726(a)(1) imposes no penalty on holders of priority claims who, like the IRS in this case, have ample notice of the bankruptcy, but negligently or deliberately fail to file their claims by the bar date imposed by the Bankruptcy Rules. To permit such a disregard for the rules works against the longstanding policy in bankruptcy of encouraging finality in the administration of claims. Nevertheless, this Court, however concerned it may

be about the undermining of this principle, is bound by the statutory language itself and by the Fifth Circuit's interpretation of when a chapter 7 trustee commences distribution. Indeed, it must be remembered that the Bankruptcy Reform Act of 1994 expressly added the phrase "or tardily filed before the date on which the trustee commences distribution under this section" to make one point absolutely unambiguous: priority claims that are tardily filed receive the same first tier status as timely filed priority claims so long as the tardily filed priority claims are filed before the date on which the trustee commences distribution. See *In re Anderson*, 275 B.R. 922, 924 (10th Cir. BAP 2002); *In re Fortier*, 299 B.R. 183, 189 (Bankr.W.D.Mich.2003).

Baker should, however, take some consolation in the fact that the IRS is penalized with respect to the general unsecured portion of the Claim. By having knowledge of the bankruptcy and still filing the Claim late, the IRS's allowed unsecured claim of $59,447.60 is subordinated to Baker's allowed unsecured claim of $3,165,092.77. The $59,447.60 allowed unsecured claim is placed into the § 726(a)(3) tier, whereas Baker's claim falls within the § 726(a)(2) tier because Baker's claim was timely filed. Thus, while Baker's claim may not be paid in full, Baker will probably at least receive payment for a portion of its allowed unsecured claim, whereas the IRS will probably receive nothing on its allowed unsecured claim of $59,447.60.

Finally, this Court wants to emphasize that the Trustee and Baker still have the right to challenge *the amounts set forth in the Claim*. This Court's ruling is only that the Claim itself was untimely filed; that the Claim is nevertheless an allowed claim in its entirety; that the priority portion of the Claim comes within the § 726(a)(1) category; and that the unsecured portion

of the Claim falls in the § 726(a)(3) category. Given the Court's ruling, the only amount that the Trustee and Baker—indeed, perhaps only Baker—would want to challenge is the priority amount of $132,833.08. This Court leaves it to their discretion as to whether they want to pursue such relief.

A separate order consistent with this Opinion will be entered on the docket.

## ORDER ON THE UNITED STATES OF AMERICA'S MOTION TO ALLOW UNTIMELY PROOF OF CLAIM FOR LACK OF NOTICE (DOCKET NO. 837)

On February 9, 2005, a hearing was held on the Motion of the United States of America to Allow Untimely Proof of Claim for Lack of Notice (Doc. No. 837) (the Motion), and the responses and objections thereto. The Court finds that the Motion is not meritorious and should be denied to the extent that it requests this Court to determine that the IRS's proof of claim was timely filed. The Court further finds that, although the proof of claim was not timely filed, the portion of the proof of claim constituting a priority claim must nevertheless be paid in full before any distribution is made to general unsecured claims which were timely filed. It is therefore:

ORDERED that the IRS's proof of claim is deemed to be an untimely filed proof of claim; and it is further

ORDERED that the priority portion of $132,833.08 set forth in the IRS's proof of claim falls within the first tier of distributees under 11 U.S.C. § 726(a)(1) and, therefore, this claim must be paid in full before the chapter 7 Trustee makes any distribution to those claimants who fall within the second tier of distributees under 11 U.S.C. § 726(a)(2); and it is further

ORDERED that the proof of claim filed by Baker Hughes Oilfield Operations, Inc., which is a general unsecured claim totaling $3,165,092.77, falls within the second tier of distributees under 11 U.S.C. § 726(a)(2) and, therefore, this claim must be paid in full before the chapter 7 Trustee makes any distribution to those claimants who fall within the third tier of distributees under 11 U.S.C. § 726(a)(3); and it is further

ORDERED that the general unsecured portion of $59,447.60 set forth in the IRS's proof of claim falls within the third tier of distributees under 11 U.S.C. § 726(a)(3) and, therefore, may not be paid until all claims falling within the second tier of distributees under 11 U.S.C. § 726(a)(2) are paid in full; and it is further

ORDERED that nothing in this order shall bar the chapter 7 Trustee or Baker Hughes Oilfield Operations, Inc. from objecting to the amounts set forth in the IRS's proof of claim; provided, however, that they must file such objections on or before May 9, 2005 or else the amounts set forth in the IRS's proof of claim shall be deemed allowed under 11 U.S.C. § 502(a) and shall not be subject to further attack.